# Office DEPOT

## EMPLOYEE NON-COMPETITION, CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

THIS AGREEMENT is made as of _04/25/2006_ ("Date") between Office Depot, Inc., a Delaware corporation (the "Company") and _Patrick J. LaVelle_ ("Employee").

In consideration of the mutual covenants contained herein and other good and valuable consideration, including the compensation paid to and benefits received by Employee as an employee of the company, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    <u>Confidential Information</u>.  Employee acknowledges that the information, observations and data obtained by Employee while employed by the Company and its subsidiaries concerning the business or affairs of the Company or any subsidiary of the Company ("<u>Confidential Information</u>") are the property of the Company or such subsidiary. Therefore, Employee agrees that Employee shall not disclose to any unauthorized person or use for Employee's own purposes any Confidential Information without the prior written consent of the Company, unless and to the extent that the aforementioned matters become generally known to and available for use by the public other than as a result of Employee's acts or omissions.  Employee shall deliver to the Company at the termination of Employee's employment, or at any other time the Company may request, all memoranda, notes, plans, records, reports, computer tapes, printouts and software and other documents and data (and copies thereof) relating to the Confidential Information, Work Product (as defined below) or the business of the Company or any subsidiary which Employee may then possess or have under Employee's control.

2.    <u>Inventions and Patents</u>.

    a)       Employee acknowledges that all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports and all similar or related information (whether or not patentable) which relate to the Company's or any of its subsidiaries' actual or anticipated business, research and development or existing or future products or services and which are conceived, developed or made by Employee while employed by the Company and its subsidiaries ("<u>Work Product</u>") belong to the Company and/or such subsidiary.  Employee shall promptly disclose such Work Product to the Company and perform all actions reasonably requested by the Company (whether during or after employment) to establish and confirm such ownership (including, without limitation, the execution of assignments, consents, powers of attorney and other instruments).

    b)       Notwithstanding the obligations set forth in paragraphs 1 and 2(a) above, after termination of Employee's employment with the Company, the Employee shall be free to use Residuals of the Company's Confidential Information and Work Product for any purpose, subject only to its obligations with respect to disclosure set forth herein and any

3/98

copyrights and patents of the Company. The term "Residuals" means information in non-tangible form that may be retained in the unaided memory of Employee derived from the Company's Confidential Information and Work Product to which Employee has had access during his or her employment with the Company. Employee may not retain or use the documents and other tangible materials containing the Company's Confidential Information or Work Product after the termination of his or her employment with the Company.

3.     <u>Non-Compete, Non-Solicitation.</u>

a)     In further consideration of the compensation to be paid to Employee hereunder, Employee acknowledges that in the course of Employee's employment with the Company, Employee has and will become familiar with the Company's trade secrets and with other Confidential Information concerning the Company and its subsidiaries and that Employee's services shall be of special, unique and extraordinary value to the Company and its subsidiaries. Therefore, Employee agrees that during employment and for six months thereafter (the "<u>Non-compete Period</u>"), Employee shall not directly or indirectly own any interest in, manage, control, participate in, work for, consult with or render services for office products superstores or contract/commercial stationers within any geographical area in which the Company or its subsidiaries engage or plan to engage in such businesses. Examples of such competitors currently include but are not limited to Office Max, Staples and Corporate Express. Nothing shall prohibit Employee from being a passive owner of not more than 2% of the outstanding stock of any class of a corporation, which is publicly traded so long as Employee has no active participation in the business of such corporation. The Company presently does not enforce this paragraph in California. However, Employee is still required to sign this Agreement since Employee may already work in the future, in a state where this paragraph in all other states in which it is enforceable, and in California in the future, to reflect any legislative or legal developments which will permit its enforcement to the fullest extent permitted by California law.

b)     While employed by the Company or any subsidiary thereof and for a period of six months after the termination of Employee's employment, Employee shall not directly or indirectly through another entity (i) induce or attempt to induce any employee of the Company or any subsidiary to leave the employ of the Company or subsidiary, or in any way interfere with the relationship between the Company or any subsidiary and any employee thereof, (ii) hire any person who was an employee of the Company or any subsidiary at any time during his/her employment or (iii) induce or attempt to induce any customer, supplier, licensee, licenser, franchisee or other business relation of the Company or any subsidiary to cease doing business with the Company or such subsidiary, or in any way interfere with the relationship between any such customer, supplier, licensee or business relation and the Company or any subsidiary (including, without limitation, making any negative statements or communications about the Company or its subsidiaries).

c)     The provisions of this paragraph 3 will be enforced to the fullest extent permitted by the law in the state in which Employee resides at the time of the enforcement of the provision. If, at the time of enforcement of this paragraph 3, a court shall hold that the

duration, scope or area restrictions stated herein are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope or area reasonable under such circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law. Employee agrees that the restrictions contained in this paragraph 3 are reasonable.

d)     In the event of the breach or a threatened breach by Employee of any of the provisions of this paragraph 3, the Company, in addition and supplementary to other rights and remedies existing in its favor, may apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce or prevent any violations of the provisions hereof (without posting a bond or other security). In addition, in the event of an alleged breach or violation by Employee of this paragraph 3, the Non-compete Period shall be tolled until such breach or violation has been duly cured.

4.     Employee's Representations.  Employee hereby represents and warrants to the Company that (i) the execution, delivery and performance of this Agreement by Employee do not and shall not conflict with, breach, violate or cause a default under any contract, agreement, instrument, order, judgment or decree to which Employee is a party or by which Employee is bound, (ii) Employee is not a party to or bound by any employment agreement, non-compete agreement or confidentiality agreement with any other person or entity and (iii) upon the execution and delivery of this Agreement by the Company, this Agreement shall be the valid and binding obligation of Employee, enforceable in accordance with its terms.  Employee hereby acknowledges and represents that Employee has had an opportunity to consult with independent legal counsel regarding Employee's rights and obligations under this Agreement and that Employee fully understands the terms and conditions contained herein.

5.     Survival.  This Agreement shall survive and continue in full force in accordance with its terms notwithstanding any termination of employment.  Nothing in this Agreement shall be deemed to imply any obligation of continued employment of Employee by the Company which employment shall be "at will" unless otherwise specifically agreed in writing.

6.     Notices.  Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, or mailed by first class mail, return receipt requested, to the recipient at the address below indicated:

> Notices to Employee:  Employee's last address appearing in the payroll/personnel records of the Company.
>
> Notices to the Company:
> Office Depot, Inc.
> 2200 Old Germantown Road
> Delray Beach, Florida 33445
> Attention:  Chief Financial Officer
>
> and

Office Depot, Inc.
2200 Old Germantown Road
Delray Beach, Florida 33445
Attention: Executive Vice President – Human Resources

or such other address or to the attention of such other person as the recipient party shall have specified by prior written notice to the sending party.  Any notice under this Agreement shall be deemed to have been given when so delivered or mailed.

7.     Severability.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or any other jurisdiction, but this Agreement shall be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained herein.

8.     Complete Agreement.  This Agreement and those documents expressly referred to herein and other documents of even date herewith embody the complete agreement and understanding among the parties and supersede and preempt any prior understandings, agreements or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

9.     No Strict Construction.  The language used in this Agreement shall be deemed to be the language chosen by the parties hereto to express their mutual intent, and no rule of strict construction shall be applied against any party.

10.     Counterparts.  This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute one and the same agreement.

11.     Successors and Assigns.  This Agreement is intended to bind and inure to the benefit of and be enforceable by Employee, the Company and their respective heirs, successors and assigns, except that Employee may not assign Employee's rights or delegate Employee's obligations hereunder without the prior written consent of the Company.

12.     Choice of Law.   All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and the exhibits and schedules hereto shall be governed by, and construed in accordance with, the laws of the State of Florida, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Florida or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Florida.

13.     Amendment and Waiver.  The provisions of this Agreement may be amended or waived only with the prior written consent of the Company and Employee, and no course of conduct or failure or delay in enforcing the provisions of this Agreement shall affect the validity, binding effect or enforceability of this Agreement.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

Employee: _Patrick J. Lavell_

Name: _PATRICK  J.  LAVELLE   04/25/2006_            Date

Print Name: _PATRICK  J. LAVELLE_

_4793066_

Employee ID Number

Witnessed By: _[signature]_

Print Name: _Brian Kyle_

Initials: _BK_

3/98                              5