UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OFFICE DEPOT, INC. | ) | CASE NO.  1:09-cv-02791 |
| | ) | |
| | ) | JUDGE |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF OFFICE DEPOT, INC.'S** |
| IMPACT OFFICE PRODUCTS, LLC | ) | **MOTION FOR TEMPORARY** |
| | ) | **RESTRAINING ORDER AND** |
| and | ) | **PRELIMINARY INJUNCTION** |
| | ) | |
| PATRICK LAVELLE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIAN KYLE | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Office Depot, Inc. ("Office Depot"), moves this Court for the entry of a temporary restraining order, pending a hearing on Office Depot's motion for preliminary injunction, enjoining and prohibiting Defendants Impact Office Products, LLC ("IOP"), Patrick Lavelle ("Lavelle") and Brian Kyle ("Kyle") as follows:

(1)     Prohibiting Kyle and Lavelle, for a period of six months from the date of this Order, from soliciting or servicing customers of Office Depot or potential customers of Office Depot solicited by Kyle, Lavelle or other Office Depot employees with Kyle and/or Lavelle's knowledge;

(2)     Permanently enjoining Kyle and Lavelle from using or disclosing Office Depot's trade secret and confidential information, and from otherwise violating the Employee Agreement in way;

(3)     Prohibiting Kyle and Lavelle from being employed by or performing services on behalf of IOP, within the geographic territory they were assigned by Office Depot, for six months from the date of this Order;

(4)     Prohibiting IOP, for a period of six months from the date of this Order, from soliciting or servicing customers of Office Depot or potential customers of Office Depot solicited by Kyle, Lavelle or other Office Depot employees with Kyle and/or Lavelle's knowledge within the geographic territories worked by Kyle and Lavelle during their employment with Office Depot;

(5)     Permanently enjoining IOP from using or disclosing Office Depot's trade secret and confidential information and from otherwise interfering with Office Depot's contracts and business relationships with Kyle and Lavelle and its customers; and

(6)     Defendants are prohibited from, in addition to the above, directly or indirectly, violating Ohio's Uniform Trade Secrets Act.

This Motion is based upon the grounds set forth in the accompanying Memorandum in Support and the Verified Complaint.

Respectfully submitted,

*/s/ Edward H. Chyun*
Robert M. Wolff (0006845)
Edward H. Chyun (0076880)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114-2531
Telephone:     (216) 696-7600
Facsimile:     (216) 696-2038
e-mail:  rwolff@littler.com
              echyun@littler.com
Attorneys for Plaintiff
Office Depot, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| OFFICE DEPOT, INC. | ) | CASE NO. |
|  | ) |  |
|  | ) | JUDGE |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| IMPACT OFFICE PRODUCTS, LLC | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| PATRICK LAVELLE | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| BRIAN KYLE | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---

**PLAINTIFF OFFICE DEPOT, INC.'S
BRIEF IN SUPPORT OF ITS MOTION FOR
TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

---

Robert M. Wolff (0006845)
Edward H. Chyun (0076880)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114-2531
Telephone:     (216) 696-7600
Facsimile:     (216) 696-2038
e-mail:  rwolff@littler.com
               echyun@littler.com
Attorneys for Plaintiff
Office Depot, Inc.

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................... 3

    1.    Lavelle and Kyle, As Office Depot Employees, Gain Access to Trade
          Secret Information, and Agree to Safeguard this Information and to
          Refrain from Competition and Solicitation for Six Months ............................ 3

    2.    Kyle and Lavelle Purloin Office Depot Trade Secrets, Commence
          Employment with IOP and Begin to Secretly Compete Against Office
          Depot in Violation of Their Employment Agreements ..................................... 7

III.  ARGUMENT ............................................................................................ 9

    1.    Office Depot Will Likely Succeed on the Merits ........................................... 10

          A.    Office Depot Will Likely Succeed on the Merits of its Breach of
                Contract claim ............................................................................. 11

                i.    Ohio Law .......................................................................... 12

                ii.   Florida Law ....................................................................... 15

          B.    Office Depot Will Likely Succeed on the Merits of Its Tortious
                Interference with A Contract Claim ..................................................... 18

          C.    Office Depot Will Likely Succeed on the Merits of Its
                Misappropriation of Trade Secrets Claim .............................................. 19

    2.    In the Absence of a Temporary Restraining Order, Office Depot will
          Suffer Irreparable Harm ................................................................... 20

    3.    The Irreparable Harm that Office Depot Will Suffer Without Temporary
          Injunctive Relief Outweighs Any Potential Inconvenience to the
          Defendants and Third Parties .............................................................. 22

    4.    The Requested Temporary Injunction Will Foster the Public's Interest in
          Upholding Reasonable Covenants ......................................................... 23

IV.   CONCLUSION .......................................................................................... 24

i

# TABLE OF AUTHORITIES

## CASES

*Auto-nation Inc., v. O'Brien*,
    347 F. Supp.2d 1299 (S.D. Fla. 2004) ................................................................ 18

*Arthur Murray Dance Studio of Cleveland v. Witter*,
    105 N.E.2d 685 (Ohio 1952) ............................................................................ 20

*Basicomputer Corp. v. Scott*,
    973 F.2d 507 (6th Cir. 1992) ............................................................... 20, 21, 22

*Basicomputer Corp. v. Scott*,
    791 F. Supp. 1280 (N.D. Ohio 1991) ............................................................... 22

*Cabot Corp. v. King*,
    790 F. Supp. 153 (N.D. Ohio 1992) ................................................................ 10

*Century Business Services, Inc. v. Urban*
    900 N.E.2d 1048 (Cuyahoga Cty. 2008) ......................................................... 13

*Convergys Corp. v. Tackman*
    169  Ohio App. 3d 665 (Hamilton Cty. 2006) .................................................. 20

*Diamond Co. v. Gentry Acquisiting Corp.*,
    531 N.E.2d 777 (Cuyahoga Cty. 1900) ............................................................ 10

*Economou v. Physicians Weight Loss Center of America*,
    756 F.Supp. 1024 (N.D. Ohio 1991) ............................................................... 10

*Fred Siegel Co., L.P.A. v. Arter & Hadden*,
    85 Ohio St.3d 171 (1999) ................................................................................ 18

*H.L.S. Bonding Co. v. Fox*,
    2004 Ohio App. LEXIS 360 (Franklin Cty., Feb. 3, 2004) .............................. 14

*Homan v. A1 AG Services, LLC*,
    175 Ohio App. 3d 51 (Mercer Cty. 2008) ....................................................... 14

*In re: Eagle-Picher Industries, Inc.*
    963 F.2d 855 (6th Cir. 1992) .......................................................................... 10

*Kenty v. Transmerica Premium Ins. Co.*,
    72 Ohio St.3d 145 (1995)
    ........................................................................................18

*Lakeland Employment Group of Akron, LLC v. Columber*,
    101 Ohio St.3d 242 (2004) .............................................................................. 12

*Mason Cty. Med. Ass'n v. Knebel,*,
    563 F.2d 256 (6th Cir. 1977) .......................................................................... 10

*Murray v. Accounting Ctr. & Tax Servs.*,
    178 Ohio App.3d 432 (Lucas Cty. 2008) ......................................................... 14

*Mesarvey, Russell & Co. v. Boyer*,
    1992 Ohio App. LEXIS 3947 (Franklin Cty. July 30, 1992)
    ................................................14

*National Interstate Ins. Co. v. Perro*,
    934 F. Supp. 883 (N.D. Ohio 1996) ................................................................ 14

*Procter & Gamble Company v. Stoneham,*
    140 Ohio App.3d 260 (Hamilton Cty. 2000) ................................................. 9, 20

*Proudfoot Counsulting Company v. Gordon,*
    576 F.3d 1223 (11th Cir. 2009) ..................................................................... 17, 21

*Raimonde v. VanVlerah,*
    42 Ohio St.2d 21 (1975)................................................................12, 14, 21, 22

*Rogers v. Runfola & Associates,*
    52 Ohio St.3d 5 (1991) ......................................................................................... 13

*Roth v. Bank of the Commonwealth,*
    583 F.2d 527 (6th Cir. 1978)................................................................................ 10

*UZ Engineered Products Company v. Midwest Motor Supply Co.,*
    147 Ohio App.3d 382 (Franklin Cty. 2001) ....................................................... 13

*Widmer v. Fretti,*
    95 Ohio App. 7 (Lucas Cty. 1952)...................................................................... 22

### STATUTES

Florida Stat §542.335............................................................................... 15, 16, 17

Ohio Rev. Code §1333.61 ................................................................................... 19

Ohio Rev. Code §1333.62 ............................................................................. 19, 20

## INTRODUCTION

Defendants, Patrick Lavelle and Brian Kyle, are former employees of Plaintiff, Office Depot, Inc., and current employees of Defendant, Impact Office Products ("IOP"), a direct competitor of Office Depot. (*See* Verified Complaint filed contemporaneously with this Motion). While employed by Office Depot, Lavelle and Kyle were engaged in marketing, sales and business development. (*Id.* at ¶¶15, 32-33). Office Depot has recently learned that these employees, prior to their resignation, secretly copied and absconded with highly confidential sales, customer and pricing information. (*Id.* at ¶¶37- 43). In addition, Office Depot has learned that these employees have unfairly competed against it by using this trade secret information, on behalf of IOP, to solicit Office Depot customers. (*Id.*).

Lavelle and Kyle, during their employment with Office Depot, had access to extensive proprietary and confidential trade secret information. (*Id.* at ¶¶16, 34). To prevent disclosure of its confidential, proprietary information and trade secrets, Office Depot required Lavelle and Kyle to execute an Employee Non-Competition, Confidentiality and Non-Solicitation Agreement ("Employee Agreement"), which provided for the protection and continued confidentiality of Office Depot's confidential information and trade secrets during and after Lavelle's and Kyle's employment. (*Id.* at ¶¶19-20). The Employee Agreement also prohibited Lavelle and Kyle from soliciting clients and customers of Office Depot for a period of six months following the termination of their employment with Office Depot. (*Id.* at ¶¶21-22). Defendant IOP, with full knowledge of the Employee Agreements, solicited and induced Lavelle and Kyle to leave their employment with Office Depot and to work for IOP. (*Id.* at ¶48). Following Lavelle's and Kyle's separation of employment with Office

1

Depot, and perhaps prior, Lavelle, Kyle and IOP began utilizing Office Depot's proprietary and confidential trade secret information and began soliciting Office Depot's clients and customers in direct violation of Lavelle's and Kyle's Employee Agreements.  (*Id.* at ¶¶39-40, 50-51).

As a result of these unlawful actions of Defendants, Office Depot respectfully requests that this Court enjoin Lavelle, Kyle and IOP from violating the terms of the Employee Agreements signed by Lavelle and Kyle that address, among other things, non-solicitation of Office Depot's clients and customers for a specific period of time.  The activities of Defendants threaten to irreparably harm Office Depot by impeding its ability to compete fairly in the marketplace.  Accordingly, the Court should grant Office Depot's Motion for Temporary Restraining Order and Preliminary Injunction.

## STATEMENT OF FACTS

1. **Lavelle and Kyle, As Office Depot Employees, Gain Access to Trade Secret Information, and Agree to Safeguard this Information and to Refrain From Competition and Solicitation for Six Months**

Office Depot is a global supplier of office products and services. (*Id.* at ¶14). Office Depot sells a broad assortment of merchandises, such as general office supplies, computer supplies, business machines, office furniture, as well as related products and services. (*Id.*). Office Depot has numerous retail locations nationwide. Office Depot also has a Business Solutions Division, which sells and provides office supply products and services directly to businesses. (*Id.*). Office Depot's successful product and service sales are based in substantial part on confidential, proprietary information developed and used by Office Depot, as well as trade secrets not disclosed to the general public or to Office Depot's competitors. (*Id.*). Kyle and Lavelle worked in the Business Solutions Division for Office Depot and were responsible for marketing, selling and servicing the office supply needs of small and medium-sized to Fortune 100 companies. (*Id.* at ¶¶14-15)

As employees of Office Depot, Kyle and Lavelle were provided with and had general access to confidential, proprietary information and trade secrets developed and used by Office Depot including financial information, sales information, pricing models, the identity and lists of actual and potential clients, marketing information, and other information regarding Office Depot's methods, processes, services, clients, operations and business, and regarding the services required and/or preferred by Office Depot's clients – all of which Kyle and Lavelle were advised of and knew were not intended for dissemination. (*Id.* at ¶16). Office Depot takes extraordinary measures to prevent

3

the disclosure of its confidential, proprietary information and trade secrets to competitors and others. In fact, it has promulgated numerous policies designed to protect this information – such as, the Code of Ethical Behavior, Confidentiality, Information Security Handbook, Global Information Security Policy and System Password Security – all of which are distributed to its employees. (*Id.* at ¶17). In addition, an employee of Office Depot is reminded of these rules and policies and must agree to comply with them every time the employee logs on to an Office Depot computer. (*Id.*). Moreover, Office Depot classifies its information based on its relative business value or sensitivity, and grants limited access to any information designated as confidential, proprietary information and trade secrets to those employees that have a legitimate reason to access such information. (*Id.*). In addition to these policies, Office Depot also requires all sales employees to execute a written Employee Agreement providing for the protection and continued confidentiality of Office Depot's information and trade secrets during and after their employment. (*Id.* at ¶18). Indeed, both Kyle and Lavelle executed the Employee Agreement. (*Id.* at ¶¶16-18)

In March, 2003, Office Depot hired Kyle as an Account Manager. At that time, Kyle executed the Employee Agreement. (*Id.,* Exhibit 1, attached thereto). In April, 2006, Office Depot hired Lavelle as a Business Development Manger. At that time, Lavelle executed the Employee Agreement. (*Id.*, Exhibit 2, attached thereto). Both Employee Agreements contain a non-compete provision, which prohibited Kyle and Lavelle from working for a competitor of Office Depot for a period of six (6) month following the separation of their employment with Office Depot:

> Employee[1] acknowledges that in the course of Employee's employment with the Company, Employee has and will become familiar with the Company's trade secrets and with other Confidential Information concerning the Company and its subsidiaries

---

1 Kyle's Employee Agreement refers to the Kyle as an "Associate" instead of "Employee."

> and that Employee's services shall be of special, unique and extraordinary value to the Company and its subsidiaries.  Therefore, Employee agrees that during employment and for six months thereafter (the "Non-compete Period"), Employee shall not directly or indirectly own any interest in, manage, control, or participate in, work for, consult with or render services for office products superstores or contract/commercial stationers within any geographical area in which the Company or its subsidiaries engage or plan to engage in such businesses.

*(Id.,* Exhibits 1 and 2, Paragraph 3(a)).

As part of the Employee Agreement, Kyle and Lavelle also specifically agreed not to solicit any of Office Depot's clients for six (6) months after the end of their employment with Office Depot:

> While employed by the Company or any subsidiary thereof and for a period of six months after the termination of the Employee's employment, Employee shall not directly or indirectly through another entity . . . (iii) induce or attempt to induce any customer, supplier, licensee, licenser, franchisee or other business relation of the Company or any subsidiary to cease doing business with the Company or such subsidiary, or in any way interfere with the relationship between any such customer, supplier, licensee or business relation and the Company or any subsidiary . . .

*(Id.,* Exhibits 1 and 2, Paragraph 3(b)).

If Kyle and Lavelle violate the Non-Compete and Non-Solicitation covenants in the Employee Agreement, the Employee Agreement provides that the six month period "shall be tolled until such breach or violation has been duly cured."  *(Id.,* Exhibits 1 and 2, Paragraph 3(d)).  In addition to the tolling of the Non-Compete period, Kyle and Lavelle specifically agreed that if they violate the Non-Compete and Non-Solicitation provisions of the Employee Agreement, Office Depot,

> in addition and supplementary to other rights and remedies existing in its favor, may apply to any court of law or equity of competent jurisdiction for specific performance and/or injunctive or other relief in order to enforce or prevent any violations of the provisions hereof (without posting a bond of other security)

*(Id.,* Exhibits 1 and 2, Paragraph 3(d)).

Furthermore, in the Employee Agreement, Kyle and Lavelle agreed not to disclose to any third-party, use for their own benefit or steal any confidential information of Office Depot:

> Employee acknowledges that the information, observations and data obtained by Employee while employed by the Company and its subsidiaries concerning the business or affairs of the Company or any subsidiary of the Company ("Confidential Information") are the property of the Company or such subsidiary.  Therefore, Employee agrees that Employee shall not disclose to any unauthorized person or use for Employee's own purpose any Confidential Information without the prior written consent of the Company . . .

(*Id.,* Exhibits 1 and 2, Paragraph 1).

Finally, Kyle and Lavelle agreed to return all confidential and proprietary information of Office Depot upon their separation of employment with it:

> Employee shall deliver to the Company at the termination of Employee's employment, or at any other time the Company may request, all memoranda, notes, plans, records, reports, computer tapes, printouts and software and other documents and data (and copies thereof) relating to the Confidential Information, Work Product (as defined below) or the business of the Company or any subsidiary which Employee may then possess or have under Employee's control

(*Id.,* Exhibits 1 and 2, Paragraph 1).

Both Kyle's and Lavelle's Employee Agreement contains a choice of law provision which provides that "[a]ll issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and exhibits and schedules hereto shall be governed by, and construed in accordance with the laws of the State of Florida." *(Id.,* Exhibits 1 and 2, Paragraph 12). In addition, Lavelle's Employee Agreement, also, provides that the covenants prohibiting competition and solicitation for a period of six (6) months (Paragraph 3), "will be enforced to the fullest extent permitted by the law in the state in which the Employee resides at the time of the enforcement of the provision." (*Id.*, Exhibit 2, Paragraph 3(c)).

The protections accorded to Office Depot in the Employee Agreement are essential to Office Depot's ability to successfully conduct its business.  Absent the protections contained in the Agreement, former Office Depot employees – like Kyle and Lavelle – will be able to successfully raid Office Depot's customers and steal confidential and proprietary information, thereby irreparably damaging Office Depot.  (*Id.* at ¶29).

> **2.**     **Kyle and Lavelle Purloin Office Depot Trade Secrets, Commence Employment With IOP and Begin to Secretly Compete Against Office Depot in Violation of Their Employment Agreements.**

Both Kyle and Lavelle voluntarily resigned their employment with Office Depot in June of 2009 and did not disclose their plans to work for a competitor of Office Depot. (*Id.* at ¶30).  When they voluntarily and unilaterally resigned their employment, Kyle was Office Depot's Major Accounts Business Development Manager and Lavelle was Office Depot's Territory Development Manager. (*Id.* at ¶31).  In these positions, Kyle and Lavelle had unfettered access to virtually all of Office Depot's confidential and proprietary information and trade secrets, including but not limited to financial information, sales information, pricing models, the identity and lists of actual and potential clients, marketing information, and other information regarding Office Depot's methods, processes, services, clients, operations and business, and regarding the services required and/or preferred by Office Depot's clients. (*Id.* at ¶34).  Armed with the full resources and support of Office Depot, and the benefit of training provided to them, Kyle and Lavelle became high producers in the Southeast region for Office Depot. (*Id.* at ¶¶35-36).

Shortly before Kyle's resignation from Office Depot, Kyle copied, downloaded and emailed to Lavelle confidential documents, which contained a variety of confidential customer information, including but not limited to, documents containing pricing information and other sensitive information

regarding Office Depot's clients and customers.  (*Id.* at ¶37).  In addition, Kyle also emailed to his personal email address a list of his assigned Office Depot accounts and their forecasts.  (*Id.*).  Upon information and belief, this confidential trade secret information has been used by Lavelle, Kyle and IOP to unfairly compete against Office Depot.  Indeed, based upon e-mail files recently discovered, Office Depot believes that Kyle and Lavelle commenced competing against Office Depot on behalf of IOP while they were still in Office Depot's employ.  (*Id.* at ¶¶37-39).

Following their resignation, Kyle and Lavelle became employees of IOP and began (and/or continued) soliciting Office Depot's clients and customers who were involved with Office Depot and whom they had knowledge of during their employment with Office Depot.  (*Id.* at ¶40).  IOP is a direct competitor of Office Depot, and engages in the business of providing office supplies, office furnishings and interiors, printing and promotional products and coffee breakroom supplies. (*Id.* at ¶46).  IOP is headquartered in Beltsville, Maryland and until recently did not engage in any business in the State of Ohio. (*Id.* at ¶47).

Office Depot recently learned that at least three (3) of its customers were solicited by Kyle and/or Lavelle.  (*Id.* at ¶41).  In fact, Kyle in an attempt to convert one of Office Depot's customers stated:

> I spent 6 years at Office Depot.  Your account is one that runs 35% over cost.  The industry standard is 20%.  For example your current price is over $30.00 per case.  My standard price is $28.69.  Why would there be no interest in saving money for your company in today's economy.

(*Id.* at ¶42).

Office Depot learned about Kyle's and Lavelle's violations of their Employee Agreement in early October, 2009.  Immediately thereafter, on October 14, 2009, Office Depot sent both Kyle and

Lavelle a letter reminding them of their contractual obligations. *(Id.,* Exhibits 3 and 4, attached thereto). As of the date of filing this Motion, only Kyle has responded to this correspondence. Kyle, however, refused to comply with his obligations under the Employee Agreement. (*Id.* at ¶45). In addition, on October 15, 2009, immediately after Office Depot learned that Kyle and Lavelle were working for IOP and were attempting to convert Office Depot's clients, Office Depot notified IOP that Kyle and Lavelle had binding contracts with Office Depot, which prohibit them from: (1) working for a competing business, (2) divulging and using Office Depot's trade secret and confidential information, and (3) contacting and soliciting Office Depot's customers. *(Id.,* Exhibit 5, attached thereto).

Despite this and with full knowledge, IOP has and continues to encourage, direct, participate, ratify and benefit from Kyle's and Lavelle's breaches of the Employee Agreement. Kyle, Lavelle and IOP are utilizing the highly confidential and trade secret information of Office Depot to target and solicit business from Office Depot's customers, including, but not limited to, sharing Office Depot's profit margins with customers and accessing confidential password secured Office Depot website without consent. (*Id.* at ¶51).

## ARGUMENT

The purpose of preliminary injunctive relief is to preserve the status quo between the parties pending a trial on the merits. *Procter & Gamble Co. v. Stoneham*, 140 Ohio App. 3d 260, 267 (2000). In determining whether to award temporary injunctive relief, such as a temporary restraining order, this Court must consider the following factors:

1.    Whether Office Depot has a substantial likelihood or probability of success on the merits;

2. Whether Office Depot will suffer irreparable injury if the relief is not granted;

3. Whether the injunctive relief would unjustifiably harm a third party; and

4. Whether the public interest would be served by issuing the injunctive relief.

*See Economou v. Physicians Weight Loss Centers of America*, 756 F. Supp. 1024, 1030 (N.D. Ohio 1991); *Diamond Co. v. Gentry Acquisition Corp.*, 531 N.E.2d 777, 778-79 (Cuyahoga Cty. 1988); *In re: Eagle-Picher Industries, Inc.*, 963 F.2d 855 (6th Cir. 1992); *Mason Cty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).

No one factor is dispositive, and the Court should weigh each factor in light of the factual circumstances of the case.  In general, courts will apply a "sliding" scale:  the more likely it is that the plaintiff will prevail on the merits, the less need there is to show irreparable harm.  Conversely, if the plaintiff makes a strong showing of irreparable harm, preliminary injunctive relief may be granted as long as the plaintiff has raised questions that are "fair ground for litigation."  *Cabot v. King*, 790 F. Supp. 153, 155 (N.D. Ohio 1992), *citing Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-38 (6th Cir. 1978).  As shown below, in considering and balancing these factors, it is clear that Office Depot is entitled to injunctive relief.

**1.     Office Depot Will Likely Succeed on the Merits**

Office Depot will likely succeed on the merits of its claims against Lavelle, Kyle and IOP.  The Employee Agreements are valid and enforceable under both Ohio and Florida law.  There is no dispute that Lavelle and Kyle breached their Agreements with Office Depot, and IOP has intentionally interfered with a valid, legally enforceable Agreements between Office Depot and Lavelle, and Office

Depot and Kyle. Therefore, Office Depot will likely succeed on the merits of its claims against Lavelle, Kyle and IOP.

**A.    Office Depot Will Likely Succeed on the Merits of Its Breach of Contract Claim**

The non-solicitation and non-compete provisions of the Employee Agreements are unquestionably valid and reasonable under Ohio law and Florida law, and are narrowly designed to protect Office Depot's interest and property. As discussed above, both Kyle's and Lavelle's Employee Agreement contains a choice of law provision which provides that "[a]ll issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and exhibits and schedules hereto shall be governed by, and construed in accordance with the laws of the State of Florida." (*Verified Complaint,* Exhibits 1 and 2, Paragraph 12). In addition, Lavelle's Employee Agreement also provides that the covenants prohibiting competition and solicitation for a period of six months, "will be enforced to the fullest extent permitted by the law in the state in which the Employee resides at the time of the enforcement of the provision." (*Id.,* Exhibit 2, Paragraph 3(c)). Thus, Kyle's Employment Agreement is subjected to Florida law, and there is a plausible argument that Lavelle's Employment Agreement is subjected to Ohio law. In either event, the Employment Agreements are valid under both Ohio and Florida law. Therefore, Office Depot will likely succeed on the merits of its breach of contract claim.

Plaintiff seeks to enforce, for a period of six months from the date of this courts order, that Lavelle and Kyle be enjoined from competing against Office Depot within the territories in northeast and central Ohio, where they were assigned to work by Office Depot.[2] In addition, Plaintiff seeks an

_____

2 Lavelle's territory extended from Millersburg, Ohio east to the Pennsylvania state line and from Cuyahoga Falls and

11

order restraining Kyle and Lavelle, for a period of six months, from soliciting any customers of Office Depot. Finally, Office Depot requests that this Court enjoin IOP from benefiting, in any manner during the next six months, from Kyle's and Lavelle's breach of contract and conversion of trade secrets.

### i.    Ohio Law

In *Lakeland Employment Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242 (2004), the Ohio Supreme Court explained that it has "long recognized the validity of agreements that restrict competition by an ex employee if they contain reasonable geographic and temporal restrictions." The Supreme Court in *Raimonde v. VanVlerah*, 42 Ohio St.2d 21 (1975) expressly held that:

> A covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests (paragraphs 2 and 3 of the Syllabus in *Extine v. Williamson Midwest*, 176 Ohio St. 403, overruled).
>
> A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public.

(Syllabus at paragraphs 1 and 2).

Moreover, Ohio courts have consistently recognized the legitimate interest and need for an employer to protect its customer and client information.

> An employer has a legitimate interest in limiting not only a former employee's ability to take advantage of personal relationships the employee has developed while representing the employer to the employer's established client, but also in preventing a former employee from using his former employer's customer lists or contacts to solicit new customers.***In addition, an employer has a legitimate interest in preventing a former employee from using the skill, experience, training, and confidential

_____

Akron south to Cambridge, Ohio. Kyle focused on larger accounts, and his territory extended from Sandusky east to the Pennsylvania line and from Richland County (Mansfield) north to Lake Erie. (Verified Complaint at ¶¶ 32-33).

information the former employee has acquired during the employee's tenure with his employer in a manner advantageous to a competitor in attracting business, regardless of whether it was an already established customer of the former employer. (citations omitted).

Preventing a former employee form using his former employer's customer lists or contacts to solicit those customers is one of the traditional grounds for enforcing noncompete clauses. *Brentlinger Enterprises v. Curran*, 141 Ohio App.3d 640, 649, 752 N.E.2d 994 (2001), *citing Frank, Seringer & Chaney, Inc. v. Jesko*, 9th Dist. No. 89CA004577, 1989 Ohio App. LEXIS 4519 (December 6, 1989).

Thus, for Urban to suggest that because his clients were serviced by many CBIZ employees, that his personal relationships were insignificant or trivial in some way, raises doubts as to his entire argument. Urban had over 350 clients at CBIZ with a client billing of $1.5 million. This court cannot conclude that his client relationships were inconsequential simply because other employees handled some of the services for his clients.

*Century Business Services, Inc. v. Urban*, 900 N.E.2d 1048, 1058, 28 I.E.R. Cas. BNA 985 (Cuyahoga Cty. 2008); *see also UZ Engineered Products Company v. Midwest Motor Supply Co.*, 147 Ohio App.3d 382 (Franklin Cty. 2001).

Indeed, courts have specifically found that even a longer one-year prohibition on competition and solicitation of clients is reasonable and enforceable. In *Rogers v. Runfola & Associates*, 52 Ohio St.3d 5 (1991), the Ohio Supreme Court declined to enforce a prohibition imposed by a court reporting firm against a former employee from competing for two years and from ever soliciting or diverting clients of the former employer. The Supreme Court held those restrictions were overbroad, and "blue penciled" the contract to provide that the former employee would be:

> prohibited for a period of one year from engaging in court reporting or the stenography business with any person, firm or other business entity with an office located within the City limits of Columbus, Ohio. Further, appellee shall, from the date of this order, be prohibited for a period of one year from soliciting or diverting any of Runfola's clients that have employed Runfola seeking advice, assistance or services.

13

*Id.*

Therefore, there can be no question that a six month non-solicitation and non-competition provision Office Depot seeks to enforce here is reasonable and valid under Ohio law. There is no doubt that Lavelle and Kyle, during their employment, acquired extensive proprietary and confidential trade secret information, including the office supply needs, preferences and history of scores of Office Depot's clients and the identity and attributes of customers. According to well-established precedent, Office Depot has a legitimate right to protect that interest. Accordingly, Office Depot is likely to succeed on the merits of its breach of contract claim. *See, e.g., Raimonde*, 42 Ohio St. 2d 21, 28 (1975) (refusing to vacate three-year restriction on competition within 30-mile radius in practice of veterinary medicine and enforcing non-compete restriction *commencing* upon the court's order); *Murray v. Accounting Ctr. & Tax Servs.,* 178 Ohio App. 3d 432, 438 (Lucas Cty. 2008) (reduced two-year restriction to a one-year restriction); *H.L.S. Bonding Co. v. Fox,* 2004 Ohio App. LEXIS 360, at *8 (Franklin Cty. Feb. 3, 2004) (modifying five-year, 75-mile restriction to three-year, 50-mile restriction); *National Interstate Ins. Co. v. Perro,* 934 F. Supp. 883, 891 (N.D. Ohio 1996) (applying Ohio law) (enforcing prohibition on competing with former employer within the six-state territory assigned to former employee); *Mesarvey, Russell & Co. v. Boyer*, Case No. 91AP-974, 1992 Ohio App. LEXIS 3947 (Franklin Cty. July 30, 1992) (upholding restriction to prevent a former employee for a period of time of two years from offering to perform or from performing any accounting work for any client of the former employer who was served by the former employer at any time during the former employee's employment); *Homan v. A1 AG Services LLC*, 175 Ohio App.3d 51, 58 (Mercer Cty. 2008) (enforcing non-compete order for *additional* time post injunction although non-compete period otherwise expired during litigation).

14

ii.    **Florida Law**

The Florida legislature has recognized that the public has an interest in the enforcement of reasonable restrictive covenants.  To that end, the legislature enacted Florida Statutes § 542.335, which provides in pertinent part:

**542.335    Valid restraints of trade or commerce.**

(1)  . . . [E]nforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited.  In any action concerning the enforcement of a restrictive covenant:

(a)   A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.

(b)   The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.  The term "legitimate business interest" includes, but is not limited to:

1.     Trade secrets, as defined in § 688.002(4).

2.     Valuable confidential business or professional information that does not otherwise qualify as trade secrets.

3.     Substantial relationships with specific prospective or existing customers . . . or clients.

4.     Customer . . . or client goodwill associated with:

a.  An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";

b.  A specific geographic location; or

c.  A specific marketing or trade area.

15

Here, Office Depot quite literally possesses each and every one of the legitimate business interests specified by the Florida legislature.  In addition, Office Depot has clearly established a prima facie case for enforcement which cannot be rebutted by Defendants.  Fla. Stat. § 542.335 (c) provides

> A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction.  If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests.  If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest or interests, a court shall modify the restraint and grant only the relief reasonably necessary to protect such interest or interests

The statute further states, that in considering the validity of the covenant, the Court "shall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought." Fla. Stat § 542.335(g)(1).  In addition, the statute cautions that

> (h)   A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement.  A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.
>
> (i)     No court may refuse enforcement of an otherwise enforceable restrictive covenant on the ground that the contract violates public policy unless such public policy is articulated specifically by the court and the court finds that the specified public policy requirements substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint.
>
> (j)     A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. **The violation of an**

16

>**enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant**. . . .

Fla. Stat. § 542.335(1)(h)-(j).

Thus, pursuant to § 542.335(1)(c), if Office Depot presents a *prima facie* case by showing that the restraint is reasonably necessary to protect the legitimate business interests justifying the restriction, the restrictive covenant must be enforced unless ***Kyle and Lavelle carry their burden*** of proving that the contractual restraint is "overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests."  Subsection (1)(j) further provides that a court "shall enforce a restrictive covenant by any appropriate and effective remedy, including . . . temporary and permanent injunctions," and that, where there has been a violation of a restrictive covenant, there is a ***presumption of irreparable injury*** to the party seeking enforcement of the covenant.

Likewise, § 542.335(1)(d) provides that restrictive covenants restraining a former employee's post-termination conduct for a period of  **six months** or less are ***presumptively*** reasonable. Accordingly, there can be no serious challenge to a six month injunction.

A recent decision from the Eleventh Circuit is instructive regarding how the federal courts have interpreted and applied the Florida Statute.  In *Proudfoot Consulting Company v. Gordon,* 576 F.3d 1223 (11th Cir. 2009), the appellate court affirmed an injunction entered by the district court prohibiting a former vice president of business for a management consulting firm from competing or soliciting clients anywhere in North America for a six month period, tolled until the date of the court's order.  According to the Court,

17

> Even assuming that intent would, in some circumstances, be relevant under Florida law and that Gordon's belief was reasonable, we fail to see why such a belief would have prevented the district court from using Gordon's breach as a basis to toll the six month restrictive period and to enjoin, prospectively, Gordon from working for Highland.  The fact that Gordon may have reasonably erred in determining the scope of the competitor non-compete covenant does not grant him a license to compete in violation of the Agreement.

(*Id.* at 1241); *See also Auto-nation Inc., v. O'Brien,* 347 F.Supp.2d 1299, 1307-08 (S.D. Fla. 2004) (finding reasonable geographic restriction preventing employee from "working in any geographic space in which employer operates' where employer had interest in protecting confidential information).

Here, the temporal restriction of six months is prima facie reasonable under Florida law, as is the geographic restriction sought – the area where Kyle and Lavelle actually did business for Office Depot.  These Defendants have been caught red handed converting and misusing Office Depot's trade secrets. There can be no doubt that an injunction is appropriate under Florida law.

## B.  Office Depot Will Likely to Succeed on the Merits of its Tortious Interference with A Contract Claim

In order to recover for a claim of tortious interference with a contract, "one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kenty v. Transmerica Premium Ins. Co.*, 72 Ohio St. 3d 145, 650 N.E.2d 863, 866 (1995).  Showing lack of justification "requires proof that the defendant's interference with another's contract was improper."  *Fred Siegel Co. v. Arter & Hadden*, 85 Ohio St. 3d 171, 707 N.E.2d 853, 858 (1999).

Each and every one of these elements is met in this case.  IOP is aware of Lavelle's and Kyle's Employee Agreements and their restrictions on Lavelle's and Kyle's ability to work for it or solicit

Office Depot's customers and clients.  Nevertheless, IOP has offered Lavelle and Kyle positions and reaped (and fully intends in the future to reap) the benefits of Lavelle's and Kyle's violation of the non-compete and non-solicitation provision of their Employee Agreements.  IOP has no justification or privilege for inducing Lavelle and Kyle to violate their contracts.  Office Depot will undisputably be damaged by this breach in that its carefully protected trade secrets and developed customer and client relations will be lost if Lavelle, Kyle and IOP are not enjoined.

### C.  Office Depot Will Likely Succeed on the Merits of its Misappropriation of Trade Secrets Claim

Under Ohio Rev. Code §1333.62(A), actual or threatened misappropriation of a trade secret may be enjoined.  Under the statute, a trade secret includes:

> any business information or plans [or] financial information . . . that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure.  [and] (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code §1333.61(D).  The Ohio statute defines misappropriation to include disclosure or use of a trade secret of another without express or implied consent by a person who, at the time of this disclosure or use, knew or had reason to know that his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.  *See* Ohio Rev. Code §1333.61(B)(2)(b).

Here, it is irrelevant whether Lavelle or Kyle has already disclosed trade secrets or confidential information to IOP.  As noted above, Ohio Rev. Code §1333.62(A) allows a court to enjoin actual or threatened misappropriation.  There is certainly threatened misappropriation in that Lavelle and Kyle have full knowledge of Office Depot's trade secrets and confidential information and

19

are both working in a capacity where the knowledge will necessarily come into play.  They have already secretly taken and misused this information.  Therefore, Office Depot will likely succeed on the merits of its claim.

> **2.**     **In the Absence of a Temporary Restraining Order, Office Depot Will Suffer Irreparable Harm**

Lavelle, Kyle and IOP's continued solicitation and poaching of Office Depot's clients and customers will cause Office Depot irreparable harm.  Harm is deemed irreparable if "no fair and reasonable redress can be had therefore in a legal action, . . . or where the damages occasioned are estimable only by conjecture, and not by an accurate standard."  *Arthur Murray Dance Studio of Cleveland v. Witter*, 105 N.E.2d 685, 702 (Ohio 1952).  Office Depot is not required to prove that it has suffered actual harm.  *Procter & Gamble Co. v. Stoneham*, 140 Ohio App. 3d 260, 267, 747 N.E. 2d 268 (2000); *Convergys Corp. v. Tackman*, 169 Ohio App. 3d 665 (Hamilton Cty. 2006).  Office Depot only needs to show "a threat of harm" which exists "when an employee possesses knowledge of an employer's trade secrets and begins working in a position that causes him to directly compete with the former employer or the product line that the employee formerly supported."  *Id.*

The unauthorized solicitation of clients and customer by using of trade secrets, confidential or other proprietary information constitutes irreparable injury because the value of the harm generally cannot be assigned a dollar value.  In *Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992), the court upheld a preliminary injunction enjoining five former employees of Basicomputer ("Basic") from using confidential information obtained during their employment and *from soliciting clients* while employed elsewhere.  The Sixth Circuit upheld the preliminary injunction and the lower court's finding that Basic would suffer irreparable injury in the absence of the injunction:  "Specifically, the

20

[lower] court found that Basic had suffered and would continue to suffer, competitive losses and losses of customer goodwill as a result of defendants' actions." *Id*. at 511-12.  The court found that these facts were sufficient to support a finding that Basic would suffer irreparable competitive injury and loss of customer goodwill, which are injuries that the court deemed "difficult to quantify."  *Id.*

Likewise, in the present action Office Depot has a protectable interest in maintaining both its confidential information and the goodwill it has developed with customers.  This alone justifies the injunctive relief sought by Office Depot.  In addition, an award of money damages is an inadequate remedy in this case.  In most instances, Office Depot's customers and clients have been secured and maintained over a number of months and years through the expenditure of enormous amounts of money and time.  These factors have been relied upon by the courts in awarding protection to the employer.  *See Raimonde, supra*; (the violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of the restrictive covenant). Florida law is no different.  *See* Fla. Stat. §542.335 et al.; *Proudfoot Consulting Company v. Gordon, supra*.

More importantly, there is no way, at the present time, to ascertain the degree of loss that Office Depot will sustain by Lavelle's and Kyle's continued breaches of the Employee Agreement.  It is impossible to determine at this time how much damage may be caused and how many customers will be lost if Lavelle and Kyle are allowed to continue to act in complete disregard of the Agreements.  Where the breach of a covenant not to compete involves threatened financial loss to the employer, a court of equity will intervene to provide the necessary injunctive protection.  *Raimonde, supra*.  It is also well established that irreparable harm sufficient to justify preliminary injunctive relief is present where the amount of damage caused by the harm cannot be accurately measured to

21

determine damages.  *See*, *Widmer v. Fretti*, 95 Ohio App. 7, 19, 116 N.E. 2d 728, 736 (Lucas Cty. 1952) ("The Ohio authorities are in accord with the proposition that an injunction may issue in a case where the nature of the damages is not susceptible of proper assessment by the trier of the facts."). Therefore, injunctive relief is appropriate in this action.

> **3.** **The Irreparable Harm That Office Depot Will Suffer Without Temporary Injunctive Relief Outweighs Any Potential Inconvenience to the Defendants and Third Parties.**

The irreparable harm which Office Depot has suffered, and will continue to suffer, if preliminary injunctive relief is denied, outweighs any inconvenience that Lavelle, Kyle, IOP and others might suffer if injunctive relief is granted.  Lavelle and Kyle were and are well aware of their obligations under the Employee Agreement.  IOP has also been made aware of Lavelle's and Kyle's contractual obligations.  Under these circumstances, Defendants cannot possibly demonstrate *any* harm – let alone irreparable harm – that outweighs the harm Office Depot will suffer.  Lavelle and Kyle should not be allowed to ignore their obligations to Office Depot, and IOP should not be able to profit from Lavelle's and Kyle's breach of those obligations.

Furthermore, there is little, or no, danger that third parties would be harmed by the requested injunctive relief.  There simply are no third parties who could have an interest in this litigation.  *See*, *Basicomputer*, 791 F. Supp. 1280 (N.D. Ohio 1991) (there is no harm to any third party by enforcing provisions of defendants' employment contracts and by restricting the defendants' removal, retention, or misuse of plaintiff's confidential information).  Therefore, the balance of hardships weighs heavily in Office Depot's favor.

> **4.** **The Requested Temporary Injunction Will Foster the Public's Interest in Upholding Reasonable Covenants**

In this matter, the public would benefit, rather than suffer, from the requested temporary relief.  The public has an interest to see that reasonable covenants are upheld and that employees are not allowed to put their former employers at a competitive disadvantage by making unauthorized use of trade secrets and confidential information and performing services in violation of valid contracts. Indeed, the public interest will be served by preventing Lavelle and Kyle from blatantly violating the terms of the Employee Agreement and preventing IOP from tortiously interfering with parties' relations, in that, written agreements will be enforced pursuant to their terms and parties to a contract will be kept to acting in good faith, rather than in violation of contractual terms. Accordingly, the requested temporary restraining order should be granted.

23

## **CONCLUSION**

For each of the foregoing reasons, Office Depot respectfully requests that the Court grant it the injunctive relief requested.


Respectfully submitted,


*/s/ Edward H. Chyun*
Robert M. Wolff (0006845)
Edward H. Chyun (0076880)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114-2531
Telephone:     (216) 696-7600
Facsimile:      (216) 696-2038
e-mail:  rwolff@littler.com
          echyun@littler.com

Attorneys for Plaintiff
Office Depot, Inc.

24

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Plaintiff's Motion Temporary Restraining Order And Preliminary Injunction* has been served on IMPACT OFFICE PRODUCTS, LLC, at 6800 Distribution Drive, Beltsville, Maryland 20705 and 5640 – J Sunnyside Ave, Beltsville, Maryland 20705; PATRICK LAVELLE at 4917 Squire Dr., Sagamore Hills, Ohio 44067; and BRIAN KYLE at 17215 Synder Rd. Chagrin Falls, Ohio 44023, via regular U.S. mail, postage prepaid, and electronic mail, this 1st day of December, 2009.

*/s/ Edward H. Chyun*
Edward H. Chyun (0076880)

One of the Attorneys for Plaintiff
Office Depot, Inc.

Firmwide:93080757.2 063095.1000

25