IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OFFICE DEPOT, INC., | ) | CASE NO. 1:09-CV-02791 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE KENNETH McHARGH |
| | ) | |
| IMPACT OFFICE PRODUCTS, LLC, et al. | ) | **DEFENDANT IMPACT OFFICE** |
| | ) | **PRODUCTS' OBJECTIONS TO THE** |
| Defendants | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE** |
| | ) | |

I.      **Introduction**

        Defendant Impact Office Products ("Impact") files the following Objections to the Report

and Recommendation of Magistrate Kenneth McHargh which were issued on December 30,

2010.  The Objections address the following clear errors of law and fact:

        1.      The issuance of a preliminary injunction was clearly erroneous because the

Magistrate incorrectly applied both Ohio and Florida law in holding that Plaintiff had satisfied its

burden of establishing the elements of injunctive relief by clear and convincing evidence.  (See

Report – Findings of Fact at 4, 6-11, 19-23, 34, 36-53, 66, 68-9, 71, 73, 78-9, 83-4; Conclusions

of Law at 2, 3 n. 4, 11-12, 17-8, 21-8, 31-2, 34-61, 64-5).

        2.      The Magistrate erred in failing to properly determine that Impact had rebutted the

presumption of irreparable harm.  Therefore, because Plaintiff failed to produce any further

evidence of irreparable harm, no preliminary injunction should have issued.  (See Report –

Findings of Fact at 6, 19-23, 36-53, 62-71, 73; Conclusions of Law at 2, 3 n. 4, 42-3, 52-4, 65).

        3.      The Magistrate committed clear error in failing to consider uncontradicted

evidence of the affirmative defenses of waiver and laches.  (See Report – Findings of Fact at 4,

6-11, 19-23, 53, 66-9, 77-9, 82-5; Conclusions of Law at 2, 3 n.4, 45-50, 56-8).

4. The Magistrate erred in his interpretation of the enforceability of the non-compete agreements under Florida law.  (See Report – Findings of Fact at 6, 20, 36, 39-47, 49-50, 52-3, 66, 68-71, 73, 77-9, 83-5; Conclusions of Law at 8-11, 17-8, 21-5, 28, 30-2 60-4).

5. The Magistrate erred in improperly prohibiting Impact from servicing customers not covered by the non-compete even if it is enforceable.  (See Report – Findings of Fact at 4, 6-8, 62-5, 72-5, 84-5; Conclusions of Law at 2, 3 n.4, 7, 9-13, 25, 30-1, 37, 51, 60).

6. The Magistrate erred in prohibiting Impact from servicing customers outside Kyle and Lavelle's respective territories even if the non-compete is enforceable.  (See Report – Findings of Fact at 4, 6-8, 62-5, 72-5, 84-5; Conclusions of Law at 2, 3 n.4, 17-18, 30, 32).

7. The issuance of a preliminary injunction was clearly erroneous because the Magistrate failed properly to consider the undue hardship to Impact and third-parties which would result. (See Report – Findings of Fact at 4, 6-7, 62-5, 73, 85; Conclusions of Law at 2, 3 n.4, 32-44).

Since the Court is required to make a de novo review of these issues pursuant to Fed. R. Civ. P. 72(b) and Local Rule 72.3, it will be readily apparent that the findings in the Report and Recommendation ("Report") are clearly erroneous and that entry of the Preliminary Injunction was unwarranted and should be rejected or modified as discussed below[1].

## II.  The Magistrate Incorrectly Applied both Ohio and Florida Law in Holding that Plaintiff had Satisfied its Burden of Establishing the Elements of Injunctive Relief by Clear and Convincing Evidence

The Magistrate correctly found that the Non-Competition Agreements should be construed and enforced under Florida law.  (Report – Conclusions of Law at 3).  And further, that Lavelle's Non-Compete Agreement should only be "enforced to the fullest extent permitted

---

[1] In addition, Impact incorporates herein by reference the Objections, arguments and evidence filed by Defendants Kyle and Lavelle as if fully set forth herein.

by the law of Ohio."  (Report – Conclusions of Law at 4).  The Report continues on to analyze Florida Statute §542.335.  (Report – Conclusions of Law at 4).  However, beyond the statutory definitions, the Magistrate erred in using Florida case law to determine the standards for a preliminary injunction.  While the Report correctly cites to Ohio law for the standard for preliminary injunction (Report at pp. 3-7), it fails to actually apply Ohio standards to the Non-Compete Agreements.

Courts should rely on their own jurisdiction when interpreting and enforcing non-competition agreements.  *See R.W. Taylor Assocs. v. Gelrad, LLC,* No. 5:10cv256, 2010 U.S. Dist. LEXIS 89561, at *14-20 (N.D. Ohio May 14, 2010)[2] (applying Connecticut law to determine the validity of the Employment Agreements and Ohio law to the interpretation and enforcement of the same).

The Magistrate committed prejudicial error when applying Florida law for analysis that extended beyond determining the scope of the Non-Compete Agreements.  This error clearly harms Defendants because the differences between Ohio and Florida law in determining the appropriateness of a preliminary injunction are significant.  For example, "a plaintiff unable to show irreparable injury cannot establish a likelihood of success on the merits."  *Rios v. Blackwell*, 345 F. Supp. 2d 833, 836 (N.D. Ohio 2004).  *See also In re Shelly's, Inc*., 87 B.R. 931, 935 (Bankr. S.D. Ohio 1988)  ("[A] preliminary injunction may not be granted unless a showing is made that the plaintiff would suffer irreparable injury without such relief.  Despite the overall flexibility of the test for preliminary injunctive relief, and the discretion vested in the court, equity has traditionally required such irreparable harm before an interlocutory injunction may be issued."); *Brown v. Dayton Metro. Hous. Auth*. No. C-3-93-037, 1993 U.S. Dist. LEXIS 21297, at *75 (S.D. Ohio Aug. 26, 1993) ("No single factor compels the issuance of a

---

[2] Unreported cases cited herein are attached as Exhibit 1.

preliminary injunction, yet a failure to demonstrate the existence of irreparable injury absent a preliminary injunction can be fatal to a motion for such an order.")  All the requirements for an injunction must be shown by clear and convincing evidence.  *Honeywell, Inc. v. Brewer-Garrett Co.,* 145 F.3d 1331 (6th Cir. 1968) (cited in the Report at p. 4).

Despite this, the Magistrate premised his findings solely upon the presumption of irreparable harm created under the Florida statute – he did not require Office Depot to prove it suffered irreparable harm.  (Report – Conclusions of Law at 51).  Office Depot offered no other evidence to support the conclusion that irreparable harm is present to justify the injunction even though Impact properly rebutted any presumption with unrefuted testimony and evidence.

The Magistrate's failure to require Office Depot to prove all elements of a preliminary injunction is clear error.  Because preliminary injunctive relief is a drastic remedy, the clear and convincing evidence standard places a heavy burden on movants, and mere legal presumptions are insufficient to satisfy this burden.  *Commc'ns Systems, Inc. v. City of Danville, Ky*, 787 F.2d 589, 561 (6th Cir. 1986).  Office Depot cannot rely solely on Florida's presumption of irreparable harm (even if it applied to this case) to satisfy their burden of providing clear and convincing evidence of irreparable injury.[3]  It was clearly erroneous for the Magistrate to determine that Impact did not rebut the presumption of irreparable harm.  Consequently, the Magistrate's conclusion that an injunction should be entered is clearly erroneous and should be rejected.

---

[3] Even assuming, *arguendo*, that Florida law applies, the Magistrate acknowledges that §542.335 does not preclude Defendants from rebutting the presumption of irreparable harm.  *See* argument, *infra*, and *First Miami Secs., Inc. v. Bell*, 758 So. 2d 1229, 1230 (Fla. Dist. Ct. App. 4th Dist. 2000) (finding that the presumption of irreparable harm is rebutted when evidence is available to prove actual damages).  The Magistrate erred in ignoring Impact's rebuttal evidence.

### III.     The Magistrate Failed to Consider Impact's Rebuttal of the Presumption of Irreparable Harm

The Magistrate erred when he found that Defendants "have not carried their burden to overcome the presumption of irreparable injury…."  (Report – Conclusions of Law at 65).  Even though the Magistrate correctly cited the Sixth Circuit standard, he misapplied it.  The burden is on Office Depot to "demonstrate some irreparable harm before the injunction will issue." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982) (cited in the Report at p. 5).  As the Magistrate also correctly found, "the basis of injunctive relief in the federal courts has always been irreparable harm and the inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (cited in the Report at p. 5).

There is no presumption of irreparable harm under Ohio law.  "[A] plaintiff unable to show irreparable injury cannot establish a likelihood of success on the merits."  *Rios v. Blackwell*, 345 F. Supp. 2d 833, 836 (N.D. Ohio 2004).  In *Airlink Communs., Inc. v. Owl Wireless*, LLC No. 3:10 CV 2296, 2010 U.S. Dist. LEXIS 120644, at *6 (N.D. Ohio Nov. 15, 2010), plaintiff's corporate representative testified that plaintiff lost customers and revenue because of defendant's misrepresentations.  The court found that the losses were quantifiable as money damages, "[i]t is well settled that "a plaintiff's harm is not irreparable if it is fully compensable by money damages."

Under Florida law, irreparable harm is not presumed until a plaintiff has established one or more legitimate business interests justifying the requested preliminary injunction.  *See N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1230 (M.D. Fla. 2002) (cited throughout the Report).  As will be discussed below, Office Depot failed to show a legitimate business interest and thus, irreparable harm cannot be presumed.

Accordingly, Office Depot must establish irreparable harm – which it did not do.  Fisher testified that Office Depot's damages are quantifiable.  He agreed that all customers converted within the six-month time frame could be identified, that the sales to those customers could be established, and that a calculation could be done to determine what Office Depot would have earned by way of profits on those items.  (Hearing Transcript ("HT") at 780-781)[4].  Indeed, Fisher, as Office Depot's corporate representative, testified that there was a concrete formula that could be used to determine what Office Depot losses, if any, were attributable to any breach of Kyle and Lavelle's Non-Compete Agreements.  (HT at 781).  He additionally testified that Office Depot has not suffered a loss of goodwill or reputation.  (HT at 782-783).

Even assuming, *arguendo*, irreparable harm is presumed, Impact properly rebutted that presumption.  The Magistrate's application of *N. Am. Prods.* was flawed.  While it is true that Florida law recognizes the difficulty of proving monetary damages, Florida courts <u>have not</u> rejected the argument that there is no irreparable harm where money damages can be established. *See e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F. Supp. 1555, 1559-1560 (S.D. Fla. 1992) (cited by *N. Am. Prods*).  In *First Miami Securities, Inc. v. Bell*, 758 So.2d 1229, 1230 (Fla. App. 4th Dist. 2000), because the evidence showed plaintiff's actual damages, the court refused to grant a preliminary injunction to enforce a non-competition agreement.  *See also Don King Prod., Inc. v. Chavez*, 717 So.2d 1094, 1095 (Fl. 4th Dist. 1998) (actual damages were proven, rebutting the presumption of irreparable harm), *Colucci v. Kar Kare Automotive Group, Inc.*, 918 So.2d 431, 440 (Fla. App. 4th Dist. 2006) (presumption of harm rebutted by testimony that Plaintiff's allegations of damage were "speculative").

---

[4] Citations are to the Preliminary Injunction Proceedings held on Oct. 7-8 and 26-27, 2010 before Magistrate McHargh.  Deposition excerpts were submitted to the Magistrate during the proceedings.

Moreover, Impact introduced evidence in the form of cross-examination of Office Depot's corporate representative, that Office Depot had not suffered any damage to the company's reputation or goodwill  (HT at 782-783) or its ability to pursue new business (HT at 782-83).  This testimony was uncontested and must be accepted to rebut any presumption. Office Depot chose not to respond to this evidence and that is fatal to its effort to establish irreparable harm.

In conclusion, Ohio law should apply to the Preliminary Injunction standards.  Ohio law requires clear and convincing evidence of irreparable harm.  The Magistrate erred in applying Florida law, even worse, he erred in the way that he applied it as well.   Impact presented evidence that Office Depot's damages are quantifiable – a simple mathematical calculation of lost profits.  Office Depot concedes that it has no other injury and that it remains able to compete in Northeast Ohio.  Therefore, a mere presumption of harm is insufficient to satisfy the statutory requirements.  For these reasons, this Court should reject the entry of a Preliminary Injunction on this basis alone.

## IV.    Failing to Consider Uncontradicted Evidence of the Affirmative Defenses of Waiver and Laches was Clear Error

Similarly, the Magistrate erred in applying Florida law to Defendants' affirmative defenses.  (Report – Conclusions of Law at 47-48, 57).  Like the interpretation of the Non-Compete Agreements, Ohio law should have been applied to Defendants' affirmative defenses. *See Norfolk S. Ry. Co. v. Jacobs*, 549 F. Supp. 2d 990, 1002 (N.D. Ohio 2008) (applying Ohio waiver law to contract with Pennsylvania choice of law provision); *R.W. Taylor Assocs.,* 2010 U.S. Dist. LEXIS 89561, at *14-20.   The Magistrate should have applied Ohio law to Defendants' affirmative defenses of waiver and laches.

First and foremost, Kyle and Lavelle were affirmatively told by several corporate

representatives of Office Depot that Office Depot would not enforce their Non-Compete Agreements if they went to work for independent stationers.  (HT at 484-486, 664).  The test is whether all of the prior actions and words of a complainant show the complainant waived the right it seeks to now enforce.  *State ex rel. Ford v. Board of Ed. Of City School Dist. of City of Cleveland*, 141 Ohio St. 124, 127 (1943).  The evidence needs to just show a voluntary relinquishment of a known right through prior actions and words.  *Id.*

The Magistrate dismissed Defendants' waiver defense solely because Defendants did not identify an instance where Office Depot failed to enforce its non-compete in an identical situation.  (Report – Conclusions of Law at 49).  Prior to this case, Office Depot has never enforced a non-competition agreement.  Office Depot representative Gagliardo testified that he was not aware of any person or entity in the Ohio Valley region being sent a cease and desist letter or any other lawsuits seeking to enforce non-compete agreements filed in the Ohio Valley region by Office Depot.  (HT at 926-927).  Additionally, Office Depot representative Fisher informed Lavelle that during Office Depot's existence, it has never pursued anyone who took employment with another office supply company.  (HT at 488, 708).  *See also* (HT at 667 - Human Resources Manager Mandison Wilder, informed Kyle that Office Depot did not have a history of pursuing non-compete agreements because it did not want to be known as a company that inhibited someone's ability to sustain employment).  Both Kyle and Lavelle were told that this is especially true for former employees going to work for independent office suppliers, which Office Depot did not consider to be competitors.  (HT at 577, 664).

Fisher and Gagliardo's testimony binds Office Depot, as they were chosen to be the corporate representatives designated as the persons most knowledgeable about the discovery topics requested, including enforcement of non-competes.  (HT at 708).  The importance of

Fisher and Gagliardo's testimony is not what their understanding of the circumstances were, but that their testimony is imputed to be the understanding of Office Depot.  *See* Fed. R. Civ. P. 30(b)(6) ("The named organization must [] designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify…The persons designated must testify about information known or reasonably available to the organization."); *Smith v. General Mills, Inc*. No. C2 04-705, 2006 U.S. Dist. LEXIS 19093, at *16 (S.D. Ohio Apr. 13, 2006) ("A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity.") Thus, it was error for the Magistrate to analyze Fisher's testimony as "his personal knowledge, and not on behalf of Office Depot."  (Report – Findings of Fact at 78).  Further, the Report is contradictory – finding that Fisher had no authority to provide consent to waive the terms of the Non-Compete Agreement, when he was the only manager that interacted with Lavelle in the Cleveland Region.  (Report – Findings of Fact at 79; HT at 709-710).

The Magistrate failed to follow Ohio precedent.  Non-compete agreements must be evenly enforced.  *See Moda Hair Designs, Inc. v. Dechert*, No. 2005CA00192, 2006-Ohio-682, ¶16 (Ohio App. Feb. 13, 2006) (denying injunctive relief where plaintiff did not enforce the non-compete against two other employees and had, in fact, provided its customer list to one of those employees).[5]  Fisher testified:

---

[5] The case law cited by the Magistrate Judge is distinguishable.  *Linville v. Ginnn Real Estate Co., LLC*, 697 F. Supp.2d 1302 (M.D. Fla. 2010) did not involve waiver post-signing of an agreement.  Instead, the *Linville* court decided a motion to dismiss a claim for fraudulent inducement.  *Blanton v. Florida*, 978 So.2d 149 (Fla. 2008) involved a defendant who was convicted of four counts of sexual battery and thirteen counts of promoting sexual performance by a child.  Defendant appealed the admission of a recorded statement by the child instead of live testimony.  In that case, the court discussed the issue of waiver within the context of confrontation and whether the defendant waived his right to depose the victim.  In *Aspen Inv. Corp. v. Holzworth*, 587 So.2d 1372 (Fla. Dist. Ct. App. 1991), the court discussed waiver where plaintiff chose not to continue its contest of the mortgage claims.  The *Holzworth* court found that not pursuing one claim did not constitute a waiver of the slander of title claim, especially where the language of the stipulation explicitly provided otherwise.  Finally, *Fireman's Fund Ins. Co. v. Vogel*, 587 So.2d 1374 (Fla. Dist. Ct. App. 1991) involved the question of whether defendant insurance carrier waived its right to defend a malpractice claim.  The *Vogel* court reversed the entry of summary judgment where there was evidence that the party against whom waiver was sought (the insurance company) was not in possession of the material facts.

> A: I believe it's the company's position that we would look at [the competition] on an individual case basis and understand what our competitive risk was with that specific company.
>
> Q: So then you'd agree with me then based upon that, **there are exceptions to the non-compete that Office Depot will look at; it's not going to be a broad brush sweeping** if you go to any person that sells office supplies, you're not allowed to take that job, is that fair?
>
> A: **Yes.**

(HT at 768-769).  (Emphasis added.)

  In other words, Fisher admits that Office Depot would only enforce the Non-Compete Agreements if Office Depot deemed a particular situation important.  This selective enforcement approach properly has been rejected in Ohio.

  No evidence was offered to show that Office Depot ever enforced its non-competition agreements prior to this case.  There was also testimony that Office Depot knew of other former employees who were competing against Office Depot in their subsequent employment, but their non-compete agreements were not enforced.  (HT at 491, 759-760).  Where a plaintiff's agents tell defendant not to worry about the non-compete clause, that it was just a formality and that plaintiff would never enforce it, the plaintiff is estopped from enforcing the provision.  *See Chrysalis Health Care v. Brooks*, 65 Ohio Misc. 2d 32 (Ohio Mun. Ct. 1994).

  None of the cases require Defendants to meet the test laid out by the Magistrate – who apparently required Defendants to show a comparable example of the two best salespeople in a region leaving for a competitor before Office Depot's words and actions could be interpreted as a waiver[6].  (Report – Conclusions of Law at 49).  Instead, Defendants must show that plaintiff acted in a manner that Defendants could have reasonably inferred that the right to enforce the Non-Compete Agreements had been waived.  *See American Somax Ventures v. Touma*, 547 So. 2d 1266, 1268 (Fla. Dist. Ct. App. 4th Dist. 1989) (finding defendants acted in a manner that

---

[6] In effect, the Magistrate is requiring Defendants to put forth the equivalent of a similarly-situated comparator under the Title VII proof standards.  This is clearly an erroneous interpretation of the law.

plaintiff could have reasonably inferred that the right to written notice of the delay of closing had been waived). The evidence shows that Office Depot did act in a manner to indicate it was not going to enforce the Non-Competition Agreements. As such, Office Depot waived its right to enforce the Non-Compete Agreements. Therefore, the Magistrate erred in recommending the preliminary injunction be granted.

Further, "[u]nder the defense of laches, a defendant must show (1) a delay in a plaintiff's assertion of a right or claim; (2) that the delay was not excusable; (3) and that the delay caused undue prejudice. Application of this doctrine is flexible and entails an examination of the amount of delay and the prejudice caused by the delay." *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 703 F. Supp. 2d 1307, 1315 (S.D. Fla. 2010).[7] *See also State ex rel Badgett v. Mullen,* 177 Ohio App.3d 27, 47 (Ohio App. 4th Dist. 2008) (finding laches also operates to bar a claim when a plaintiff's delay in bringing suit results in "material prejudice" to the defendant).

Although the Magistrate found that "Office Depot did not initially realize that Kyle and Lavelle had gone to work for Impact," that "Gagliardo learned that Kyle and Lavelle were competing against Office Depot" in mid-September 2009, and that "Fisher testified that he missed certain clues which would have alerted him earlier that Lavelle was competing," the record reflects that the Magistrate selectively chose his references. (Report – Findings of Fact at 66, 68-69). On the contrary, unrebutted record evidence demonstrates that several Office Depot employees knew Kyle and Lavelle were competing as early as the day Kyle left in early June 2009, but Office Depot (through its two corporate representatives) "decided to let a dead horse lay." (HT 971-972).

---

[7] The case law cited by the Magistrate Judge is distinguishable. In *Miami-Dade County v. Fernandez*, 905 So. 2d 213, 216 (Fla. Dist. Ct. App. 3d Dist. 2005), the court found that the defense of laches did not apply where the county had been seeking to remediate the unlawful activities for approximately three years, and the defendants had been seeking variances to engage in the unlawful activity. In *Ticktin v. Kearin*, 807 So.2d 659 (Fla. Dist. Ct. App. 2001), child support issues were before the court. In the context of child support arrearage cases, the defense of laches is only applied in extraordinary circumstances where the facts clearly show extreme prejudice.

In fact, Office Depot had evidence during the entire 2009 summer of Lavelle and Kyle's employment with Impact:

**June 5, 2009**

- Kyle resigns (HT at 69);
- Tina Piatek prints out documents for Kyle (Piatek Depo. 43-45, HT at 722-723; *see also* Exs. E, F, G, H, and I);
- Piatek e-mails documents from Kyle's computer to herself; (HT at 721-722)
- Gagliardo calls this a "red flag" (HT at 969);
- Rannigan Walsh finds a copy of one of the e-mails on the printer and wonders "if [Kyle] is going to call on my clients" (HT at 721; Rannigan Walsh Depo. at 60-62);
- Walsh informs Fisher about the email  (*Id.*);

**June 12, 2009**

- Lavelle resigns (HT at 484);

**June 15, 2009**

- Lavelle meets with Fisher and tells Fisher he is going to work for a competitor for short time.  Fisher reminds him that he has a non-compete.  Lavelle is "elusive".  Fisher asks him numerous times where Lavelle is going (HT at 493-494);
- Fisher has access to Lavelle's computer but does not bother to examine it (HT at 498-499, 803, 893);

**June 2009**

- Piatek tells Gagliardo about the e-mails, but he "lets a dead horse lay."  (HT at 971-972);

**July 2009**

- Two significant Office Depot customers, Suarez and ATSI, discontinue ordering from Office Depot (HT at 724-725; 630-632; 681);

**July 2, 2009**

- Kovatch Castings e-mail – Lavelle testified that Kovatch reported to Office Depot that Lavelle had solicited Kovatch (Walsh Depo. 87, OD1074, Ex. 143);

**July 28, 2009**

- Stark County Department of Job & Family Services sends an email requesting a bid.  The email shows Lavelle's Impact Office e-mail address as well as two other competitors (HT at 734-735, Ex. M);
- Fisher instructs not to quote a bid (HT at 735);

**Aug 10, 2009**

- Envirite contacts Office Depot about lack of customer service, informs Office Depot that Lavelle has requested it to switch office supply companies (HT at 733, 745-746, 786, Ex. N);

**August/Sept. 2009**

- Akron Public Schools E-mail – Walsh states that she knows Lavelle was in violation of his Non-Compete Agreement (HT at 803-804, Walsh Depo at 90-93).

Office Depot now admits that it should have acted faster in seeking to enforce the restrictive covenants of Kyle and Lavelle's employment agreements.  (HT at 719-720).

> Q: So we understand that you were on notice of potential competition in June 2009 because you were concerned enough that you reminded Mr. Lavelle about his non-compete agreement, right?
> A: Yes.

(HT at 745).

Fisher testified that he had a duty to report any competition by Kyle and Lavelle that came to his attention immediately to Office Depot.  (HT at 746-749, Ex. 99 (Q: "[I]f you yourself as a manager were aware of a violation of a non-compete agreement, it's your duty to provide that to HR?  A: Yes, that is true.  Q: "There's no written policy that permits [an] exception?  A: Not that I'm aware of."))  Fisher admitted under cross-examination that Office Depot was not vigilant in protecting its confidential and proprietary information.  (HT at 749 (citing to p. 261 of Fisher's deposition testimony)).  Fisher's testimony is replete with statements that Lavelle was Fisher's top salesman, and further, that Lavelle's sales numbers affected Fisher's compensation.  (HT at 716, 749-750).  Thus, Lavelle's departure and subsequent competition would have a serious negative impact on Fisher – a fact Fisher acknowledges, but then brushes off.

Fisher attempts to excuse his and Office Depot's failure to act by claiming he was too busy to realize what was going on, an excuse the Magistrate accepted. Fisher's testimony simply is not credible, as evidenced by the multiple impeachments of his testimony at the hearing:

- Training – Fisher testified regarding all of Lavelle's training, yet there was only one training for which he had personal knowledge (HT at 691-694);
- Complaint – Fisher testified that he signed the verification of Office Depot's complaint, yet he testified that at the time he signed the verification, he had no such evidence of the matters which he swore under oath (HT at 694-698);
- Competition – Fisher testified that at the time he signed the verification, he had evidence of Kyle and Lavelle's competition, yet at his deposition he testified he did not have such information (HT at 699-701);
- Residuals – Fisher testified Kyle and Lavelle should not have been able to use residuals, yet the document clearly allows use of residuals and Fisher was the corporate representative designated as most knowledgeable about noncompetition agreements (HT at 705-708);
- Production – Fisher testified that he originally provided documents he thought were pertinent which resulted in the late production of relevant documents to Defendants (HT at 740-743);
- Confidential Information – Fisher testified that he saw Office Depot documents marked "Confidential," yet in his deposition, he testified that he was not aware of any documents marked "Confidential" (HT at 799-800).

Impact expended significant funds in hiring, training and continuing to employ Kyle and Lavelle. This included travel expenses, as well as expenses to support Kyle and Lavelle's business development efforts. Office Depot's failure to timely enforce the Non-Compete Agreement resulted in expenses and costs that could have been avoided by Impact.

Moreover, Kyle and Lavelle, consistent with their belief that Office Depot would permit them to work for an independent, continued to rely on Office Depot's inaction. Contrary to the Magistrate's finding, the delay was unreasonable. Kyle and Lavelle left Office Depot in June 2009, but Office Depot did not file suit until December 2009 – only a matter of days before both non-competes were set to expire. As the *Pandora Jewelers* court found, the application of the laches doctrine is flexible, the circumstances should dictate the analysis. Consequently, a six-month delay in a situation where the Non-Compete Agreements were only enforceable for six

months is inexcusable.  Therefore, the Magistrate erred in determining that laches did not bar Office Depot's enforcement of the Non-Compete Agreements.

## V.      The Magistrate's Interpretation Of The Non-Compete Was Plain Error

The Magistrate committed plain error in his recommended construction and interpretation of the restrictive covenants in the Non-Compete Agreements resulting in the enforcement of restrictions well beyond the plain meaning of the Non-Compete Agreements.  In fact, giving effect to the plain terms in the Non-Compete Agreements demonstrates that Kyle and Lavelle should be permitted to work for an independent office supply company.

### A.      The Non-Compete Agreements Do Not Prevent Kyle and Lavelle From Working for Impact

As an initial matter, the Magistrate incorrectly determined that the Non-Compete Agreements prohibited Kyle and Lavelle from working for Impact at all.  The Non-Compete Agreements do not attempt to prohibit Kyle or Lavelle from working for any competitor during the six-month restrictive period.  In fact, Office Depot concedes that the term "competitor" does not even appear and is not defined in Section 3 of the Agreement.  (HT at 796, 930; see also Exs. 3, 53).  Instead, the Non-Compete Agreements only prohibit Kyle or Lavelle from working for two categories of competitors:  "office products superstores" or "contract/commercial stationers" – neither of which is defined.  (HT at 796, 930-931; see also Exs. 3, 53).  The Non-Compete Agreements provide three examples of entities that are considered either office products superstores (Staples, Office Max) or contract/commercial stationers (Corporate Express).  (HT at 931-932, see also Ex. 3, ¶3A; ¶Ex. 53, ¶3A).  Corporate Express was a large contract/commercial stationer who used its own distribution channels to service its customer base and tied the customers up with long-term office supply contracts.  (HT at 828-829).  Subsequently, Corporate Express was acquired by one of the superstores.

The Non-Compete Agreements contain several defined terms: "Confidential Information", "Residuals", "Non-Compete Period", and "Work Product" all are given a specific definitional meaning. (HT at 928-930; see also Exs. 3, 53). Section 3 of the Non-Compete Agreements contain the restrictive covenants. (Exs. 3, 53). For example, the term "Residuals" is defined in the Non-Compete Agreements as anything that an employee can remember and can be used for any purpose without restriction. *Id.* New hires are not trained as to what "residuals" means. (HT at 934). Customer identities, contacts, and preferences are all "residuals" that Kyle and Lavelle were free to use. Further, to the extent that Kyle and Lavelle used any customer or other information they learned while at Office Depot but which was retained in their memory (such as the price of coffee, the specialized needs of a customer, and customer contacts), which they testified they remembered and did use, such use is expressly permitted by Office Depot regardless of whether the information was confidential, trade secret, or proprietary. (HT at 481, 483, 579, 631, 705-708, 796-797; see also Exs. 3, 53).

Impact is an independent office supply business. (HT at 827). Independents are a well-defined segment of the office supply industry focusing on business-to-business sales and small to medium-sized companies. (HT at 822-828). Impact has been in business for 9½ years, using its own pricing structure and vendor contracts to solicit customers. (HT at 827, 829-830, 855-857). Impact does not have any retail or store-front locations. (HT at 829). Impact relies on third-party wholesalers for distribution of products. (HT at 829). Impact sells direct business to business to a small subset of Office Depot's customer base. (Timothy Flynn Depo. at 68). Impact does not typically enter into contractual agreements with its customers. (HT at 829).

The Non-Compete Agreements signed by Kyle and Lavelle do not make any reference to independent office supply companies, nor do they identify an independent office supply company as an example of either "office products superstores" or "contract/commercial

stationers".  (Exs. 3, 53).  Office Depot maintained more than one version of their non-compete agreements and periodically employees were asked to sign new agreements during their employment.  (HT at 927-928, see also Ex. 88).  Another version of Office Depot's non-compete agreements, which existed and was in use while Kyle and Lavelle worked for Office Depot, both specifically referenced independent office supply companies and identified Impact as an example of an independent.  (HT at 939-940, see also Ex. 88).  This version of the agreement also contained the terms "office products superstores" and "contract/commercial stationers" and retained the references to Office Max, Staples and Corporate Express (HT at 939-942, see also Ex. 88).  If Office Depot had intended expressly to prohibit Kyle or Lavelle from working for an independent office supply company, all it would have had to do was have them sign the agreement which specifically identified Impact by category and name. However, Office Depot did not do so.  Neither Kyle nor Lavelle were asked to sign this version of Office Depot's non-compete agreements.  (HT at 943-944).

In determining that the Non-Compete Agreements did apply to Impact, the Magistrate incorrectly interpreted the term "stationer" without considering the modifier "contract/commercial".  The Florida statute prohibits construing non-compete agreements against the drafter, but it does not encourage non-compete agreements to be construed in favor of the drafter.

The term "contract/commercial stationers" is not defined.  However, the Magistrate only defined the term "stationer" in determining Impact was a contract/commercial stationer – failing to consider the adjectives contract and commercial.  (See Report at p. 33).  The Magistrate's use of the definition of only the word "stationers" is equally applicable to "office products superstores" and would render the distinctions and limitations contained in the Non-Compete Agreements meaningless. Clearly this interpretation cannot stand.  There was ample testimony in

the record that Impact is an independent business-to-business stationer, an entity vastly different from large contract stationers, such as Corporate Express.  (HT at 828-829).  Impact does not require contracts with its customers, and only rarely uses purchase agreements (HT at 829) – a business practice different from the contract/commercial stationers identified in the Non-Compete Agreement.  (*Id.*).  Moreover, if the Non-Compete Agreements were meant to apply to independents, there would be no need for Office Depot to maintain another version of its non-compete agreement specifically identifying Impact as a competitor.

Based on the evidence presented and the fact that Office Depot could have required Kyle and Lavelle to execute non-compete agreements that included independent business-to-business stationers and expressly included Impact as a defined competitor, Office Depot has not met its burden of proof that it intended independent stationers to be included in Kyle and Lavelle's Non-Competition Agreements.  Therefore, the Magistrate erred in finding that Office Depot intended Impact, as an independent business-to-business stationer, to be construed as a contract/ commercial stationer that triggered the Non-Compete Agreements.

**B.     Office Depot Failed to Show The Existence of a Legitimate Business Interest**

Even assuming that the Non-Compete Agreements did apply to Impact, Office Depot has no legitimate business interest to protect.  Under Florida law, restrictive covenants are valid if the employer can prove: (1) the existence of one or more legitimate business interests justifying the restrictive covenant, and (2) that the specified restraint is reasonably necessary to protect the established interests of the employer.  *Autonation, Inc. v. O'Brien*, 347 F.Supp. 2d 1299, 1304 (S.D.Fla.2004); see also F.S.A. § 542.335.  A "legitimate business interest" is statutorily defined in relevant part as including: (2) valuable confidential business or professional information that otherwise does not qualify as trade secrets, and (3) substantial relationships with specific prospective or existing customers, patients, or clients.  Florida law specifically states that, "[a]ny

restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable."  F.S.A. § 542.335 (emphasis added).  Office Depot cannot establish a legitimate business interest necessary for a valid restrictive covenant.

1.    <u>No Confidential Business or Professional Information</u>

The Magistrate correctly held that Office Depot failed to establish that any of the information in Kyle or Lavell's was a trade secret because the information was generally known or readily ascertainable within the industry.  (Report – Conclusions of Law at p. 43, 63), but then without any specificity, the Magistrate erroneously stated that this publicly available information was valuable confidential business or proprietary information. (Report – Conclusion of Law at 64).  This is an unmistakable error.

First, none of the documents or materials Office Depot offered into evidence as purported trade secrets or confidential information were ever marked or protected as such.  Despite Office Depot maintaining written policies that mandate confidential and trade secret information be marked as such, Office Depot's corporate representative, Fisher, admitted during his many years at Office Depot he never saw a document marked confidential.  Office Depot contends it nonetheless adequately safeguarded such information through a written policy that states all documents within Office Depot are deemed confidential by default.  It is not enough to have a policy that simply states a document is confidential by default, particularly when application of the policy will lead to the designation of documents as being confidential when they are clearly not (such as phone books, magazines, newspapers, and other publicly available documents).  The reasonable safeguarding measures mandated by law to maintain confidentiality require more than simply stating through a policy that all information and documents brought into and contained within the walls of Office Depot are confidential by default.  Confidentiality markings, as are called for by Office Depot's own written policies, are the more appropriate method to ensure

confidentiality is safeguarded.  Having failed to follow its own policies in that regard is fatal to Office Depot's contention that it reasonably safeguarded its purported trade secrets and confidential information.

2.    Even if Confidential, No Evidence of Use of Confidential Information

Moreover, even if any of the readily ascertainable or generally known information could somehow be considered confidential, no evidence was offered by Office Depot that Kyle, Lavelle, or their new employer Impact used any of Office Depot's confidential information to secure business on behalf of Impact.  (HT at 499-500, 623-624, 823).  Impact specifically directed Kyle and Lavelle not to bring documents with them.  (HT at 835; see also Ex. R). Impact has not utilized any information that Kyle or Lavelle possessed and Office Depot has admitted it had no such evidence of misappropriation of trade secrets or other confidential information.  (HT at 694-705, 823, 851-852; see also Ex. 89).  Kyle and Lavelle also deny using the information to secure business.

Second, there is no independent economic value to that information because as the Magistrate correctly determined the information is commonly known (and readily discoverable) within the office supply industry.  Customers, such as those in the customer lists Office Depot alleges Kyle and Lavelle purloined, are generally identified in the office supply industry and readily obtainable through public materials.

Any information such as the customer's usage, needs, pricing, forecasts, and even the person responsible for the business's office supply purchases are also readily shared by customers in the office supply industry.  (Report – Findings of Fact at 25 (citing Doc. 57 at 1)). Office Depot's pricing and discounts are also available on the internet, in the very market in which Kyle and Lavelle operated for Office Depot.  (Ex. 92).  Any further information such as profit margins are generally known in the industry or, as to Office Depot's margins, are readily

obtainable from certain of its customers because Office Depot often shared with customers the actual costs it was charged by the vendors.  Plainly stated, once this information is shared with third-parties (customers), the information is no longer confidential as a trade secret or otherwise. *See American Red Cross v. Palm Beach Blood Bank*, 143 F.3d 1407, 1411 (11th Cir. 1998) (vacating temporary injunction even when presented with confidentiality agreements and reasonable steps to protect secrecy because plaintiff did not rebut defendant's contention that the lists entered the public domain).  Information that is openly available on the market at minimal cost in time or expense is not the type of data courts have considered to be trade secrets.  *See Pure Foods, Inc. v. Sir Sirloin, Inc*., 84 So. 2d 51, 53-54 (Fla. 1955) ("Certainly the names of such concerns were easily obtainable from classified telephone directories and like sources, and surely the employees of appellee who became owners of an interest in the appellant-corporation could not be precluded from attempting to sell all customers whom they had known in their former positions."); *Keel v. Quality Medical Sys*., 515 So. 2d 337, 338 (Fla. Dist. Ct. App. 3d Dist. 1987) (vacating temporary injunction where "the evidence adduced at the injunction hearing simply does not demonstrate, as it must, that the customer information was confidential or was a business or trade secret.")

Another telling factor indicating customer and pricing information does not rise to confidential status (or a protectable interest) is Office Depot's own Non-Compete Agreements. Under those agreements, former employees are expressly authorized to use any of Office Depot's information (whether confidential or not) if such information was retained in their memory. (Exs. 3 and 53: "Residuals").  If its pricing and customer information was confidential, as Office Depot now contends, then it could have and should have restricted such use of "Residuals".  Having failed to restrict such "residual" usage, coupled with its failure to follow its own policies on safeguarding confidential information, Office Depot's claim now that it holds unique and

confidential information that is protectable by means of a non-competition agreement is undermined by its own actions and words.

Finally, to the extent that any information obtained by Defendants could have been considered confidential, that information is now stale and of no value.  Office Depot regularly changes its pricing.  Cost and pricing information is changed monthly pursuant to cost remediation reports, which were never marked as confidential.  Further, all pricing is assessed and most is changed on a bi-annual basis.  Anywhere between 50% to 70% of all of Office Depot's pricing is changed every 6 months.  These changes are reflected in price catalogs.  Three such catalogs have been distributed since the departures of Kyle and Lavelle from Office Depot.  Accordingly, because Office Depot itself admits that it does no pricing that is over 6 months old, or at worst a year old, any pricing information that Kyle and Lavelle may have possessed or obtained upon their departure from Office Depot regarding pricing and costs is no longer relevant.  There is no economic value to stale, old information and, accordingly, that information no longer constitutes trade secrets.  The same holds true for any forecast reports or other sales information Kyle and Lavelle took with them because, as Office Depot admits, that information becomes stale and obsolete even faster.

Accordingly, Office Depot has no legitimate protectable business interest in the information the Magistrate may have considered but erroneously failed to specifically identify as confidential.

### 3.   No Substantial Customer Relationships

The Magistrate also erred in determining that Office Depot had established the existence of substantial customer relationships.  No evidence was introduced by Plaintiff that Kyle or Lavelle had substantial relationships with customers.  Additionally, because the identity of

customers, as well as the customers business needs, have been determined by the Magistrate to be publicly available there is no legitimate business interest to protect.

Customers are generally identified in the office supply industry through public materials. Any information such as the customer's usage, pricing, forecast and even the person responsible for the business' office supply purchases are readily shared directly by customers themselves.

Information that is common and known in an industry cannot be afforded protection by a restrictive covenant.  *See Pure Foods, Inc. v. Sir Sirloin, Inc*., 84 So. 2d 51, 53-54 (Fla. 1955) ("Certainly the names of such concerns were easily obtainable from classified telephone directories and like sources, and surely the employees of appellee who became owners of an interest in the appellant-corporation could not be precluded from attempting to sell all customers whom they had known in their former positions."); *Keel v. Quality Medical Sys*., 515 So. 2d 337, 338 (Fla. Dist. Ct. App. 3d Dist. 1987) (vacating temporary injunction where "the evidence adduced at the injunction hearing simply does not demonstrate, as it must, that the customer information was confidential or was a business or trade secret.")  Because the identity of customers is publicly available, it is not a legitimate business interest.  Therefore, Office Depot cannot satisfy the prerequisite for enforcement of its Non-Compete Agreements that it has a legitimate business interest in any of its allegedly confidential information or its customer relationships.

4.    Even if Office Depot Established the Existence of Substantial Customer Relationships, the Magistrate's Specified Restraint Is Not Reasonably Necessary to Protect Plaintiff's Interests

Even assuming *arguendo* that Office Depot did establish the existence of substantial customer relationships, both the express language of the Non-Compete Agreements and the applicable case demonstrate the Magistrate's proposed restraints upon Kyle and Lavelle and, therefore, Impact are too broad and should be rejected.

The plain language in the Non-Compete Agreements expressly applies only to existing customers of Office Depot at the time Kyle and Lavelle worked there.  (See Ex. 3, 53 ¶3(b) – twice referring to "customer" with no qualification or modifier).  This provision does not even address former customers, prospective customers or customers serviced by multiple-service providers.  Thus, it is clear error to restrict Defendants from doing business with any of these entities.

As discussed more fully in Defendants Kyle and Lavelle's Objections, many of the customers they obtained on behalf of Impact fall within these categories and should not be part of any restriction.  Further, even Office Depot's corporate representative conceded there was no protectable interest in any of these past, prospective or multi-sourced customers.  (HT at 763-764).  Thus, it was also erroneous for the Magistrate to lump them into the restrictions he recommended.  (Report – Recommendations at p. 46).

Finally, Florida law also makes clear that in cases involving enforcement based on substantial customer relationships, it is appropriate to limit the enforcement of any restrictions to existing customers.  *See Shields v. Paving Stone Co*., 796 So. 2d 1267, 1268-1269 (Fla. Dist. Ct. App. 4th Dist. 2001) (modifying injunction where plaintiff did not have exclusive relationships with its customers, exclusion of customers obtained through an open bidding process was required); *Anich Indus. v. Raney*, 751 So. 2d 767, 771 (Fla. Dist. Ct. App. 5th Dist. 2000) (denying injunction where plaintiff did not identify the existence of any legitimate business interests in need of protection).  In this way, Florida courts ensure that any restriction is limited to only what is reasonably necessary to protect the former employer's interests.  Instead, the Magistrate's blanket restrictions go well beyond the clear language of the Non-Compete Agreements and the scope of Florida law and should be rejected.

### C.     Imposing an Additional Six Months of Non-Competition Exceeds the Scope of the Non-Compete Agreements

A restrictive covenant may be unreasonable if it "inflicts an unduly harsh or unnecessary result upon the employee." *Edwards v. Harris*, 964 So.2d 196 (Fla. 1st Dist. Ct. App. 2007). This Court entered a temporary restraining order on December 4, 2009 (Doc. 11).   It is undisputed that from the entry of the temporary restraining order until June 2010, Defendants ceased contacting but soliciting all Office Depot customers.   (HT at 525, 527-528, 637-638). Both Kyle and Lavelle testified that if they called upon a potential customer and learned that customer did business with Office Depot, both walked away and immediately contacted their counsel – even when the customer did not have an exclusive relationship with Office Depot. (HT at 527, 638).

"The general rule as to interpretation of non-competition agreements is that such contracts will not be construed to extend beyond their proper import or further than language of the contract absolutely requires."   *Marx v. Clear Channel Broad., Inc*., 887 So. 2d 405, 406 (Fla. Dist. Ct. App. 4th Dist. 2004) (citing *Zimmer v. Pony Express Courier Corp*., 408 So. 2d 595, 597 (Fla. Dist. Ct. App. 2d Dist. 1981) ("Contracts prohibiting an employee from engaging in a competing business, being in the nature of a contract in restraint of trade and personal liberty, will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires."); *Storz Broad. Co. v. Courtney*, 178 So. 2d 40, 42 (Fla. Dist. Ct. App. 3d Dist. 1965) (same).

Defendants already abided by the Non-Compete Agreements for the required six month period[8].   Forcing Defendants to completely sit out of the game for an additional six months would exceed the intended scope of the non-compete and result in unnecessary harshness that

---

[8] As discussed below, Florida law and Office Depot's admissions make clear that the proper breadth of the restriction should be listed to mean that current Office Depot customers that Kyle and Lavelle had a substantial relationship with at the time they resigned.

was not contemplated by the most liberal interpretation of the Non-Compete Agreements.  The Magistrate failed to take Defendants' previous compliance into account.  Therefore, the Magistrate extended the Non-Compete Agreement to a year long period.

## VI.  The Magistrate Failed Properly to Consider the Undue Hardship to Impact and Third-Parties which would Result From the Issuance of a Preliminary Injunction.

The Magistrate erred when he ruled that Impact is enjoined from servicing customers not encompassed by the language of the Non-Compete Agreements.  Moreover, his conclusions of law are contradictory.  For example, when analyzing whether the covenant is unduly harsh, the Magistrate found that Kyle and Lavelle's customers will not suffer any harm if Kyle and Lavelle are enjoined from servicing them because "Impact has methods for covering accounts when the account rep is unavailable." (Report – Conclusions of Law at 42, 54).  However, the Magistrate also found that "Florida courts do not hesitate to enforce non-compete agreements against both the employees who signed the agreements as well as against the defendant employer, even where the employees were the only signatories to the non-compete agreements." (Report – Conclusions of Law at 43).  Despite recognizing that Impact could assign other associates to cover Kyle and Lavelle's customers as a basis for justifying the broad restrictions against Kyle and Lavelle, the Magistrate apparently used the latter reasoning to recommend Impact be enjoined "from [] servicing former customers of Office Depot converted by Kyle [or] Lavelle" and "from renewing a contractual relationship with former customers of Office Depot converted by Kyle [or] Lavelle…" (Report –  Recommendation Nos. (3)(a) and (b)).

The Magistrate improperly expanded the Non-Compete Agreements by placing a blanket ban on all former Office Depot customers.  Such a result is also unduly harsh and prejudicial to Impact and the customers.  As discussed more fully above and in Defendants Kyle and Lavelle's Objections, the scope of the proposed injunction also includes former Office Depot customers

which left Office Depot long before Kyle or Lavelle joined Impact, or otherwise parted from Office Depot for reasons unrelated to Kyle or Lavelle.  Office Depot, through its corporate representatives, admitted that it was fair competition for Impact to pursue these customers.  (HT at 763-764).  Despite Office Depot admitting it has no protectable interest in preventing competition for those customers, the Magistrate nonetheless included that set of customers within the scope of his recommended injunction.  (Report – Recommendations Nos. 1–3). *Zimmer v. Pony Express Courier Corp*., 408 So. 2d 595, 597 (Fla. Dist. Ct. App. 2d Dist. 1981) ("Contracts prohibiting [] engaging in a competing business, being in the nature of a contract in restraint of trade and personal liberty, will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires.")  It was error for the Magistrate to categorically exclude all former Office Depot customers.

Further, the Magistrate erred when he found that a preliminary injunction would not substantially harm third parties.  (Report – Conclusions of Law at 54) ("More importantly, customers would be able to procure office supplies and services from a variety of stationers, vendors, and superstores which supply these products.")  There is no support for this finding in the record.  Indeed, Office Depot admitted (and all the record evidence is in accord) that a change in suppliers significantly disrupts a customer's business.  (HT at 787-788).

The Magistrate's clear contradiction is clear error – he cannot on one hand justify his recommendation against Kyle and Lavelle by reasoning a lack of harm to Impact and third parties by allowing Impact to service them, yet on the other prohibit Impact from servicing customers.  His failure to full analyze the consequences of precluding service to customers is clearly erroneous and should not be adopted.

## VII.   CONCLUSION

The Magistrate's Report and Recommendation ignores uncontroverted and undisputed facts and is replete with erroneous interpretations of applicable Ohio and Florida law.  The Magistrate failed to require Office Depot to prove the elements necessary for issuance of preliminary injunction, failed to correctly interpret the Non-Compete Agreements,  and, finding that the restrictions were valid, failed to apply Florida law to only protect a legitimate business interest, despite no evidence that Defendants had used any confidential information and instead were fairly competing in the marketplace.

Instead, the Magistrate's recommended injunction is punitive and cannot stand.  At most, a broad interpretation of the Non-Compete Agreements could result in a restriction against contacting existing Office Depot customers.  This is a restriction which Impact, Kyle and Lavelle already met from December 2009 – June 2010.  However, a proper application of Florida law and a balancing of the hardships upon Impact and third-party customers demonstrates that no restrictions are warranted.   For all of these reasons, the Magistrate's Report and Recommendations should not be adopted by this Court.

Respectfully submitted,

*/s/W. Eric Baisden*_____
W. ERIC BAISDEN (0055763)
AMIE L. LABAHN (0079089)
HAHN, LOESER & PARKS, LLP
200 Public Square, Ste. 2800
Cleveland, Ohio 44114
216-622-8200 phone
216-241-0816 fax
ebaisden@hahnlaw.com

*Attorneys for Defendant-Counterclaimant Impact Office Products, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th  day of January 2011, a copy of the foregoing Objections to the Report and Recommendation of the Magistrate was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

_/s/ W. Eric Baisden_____
One of the Attorneys for Defendants/
Counterclaimants