UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OFFICE DEPOT, INC., | ) | Case No.: 1:09 CV 2791 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE SOLOMON OLIVER |
| IMPACT OFFICE PRODUCTS, LLC, | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court in the above-captioned case are Defendants' Impact Office

Products ("Defendant IOP"), Patrick Lavelle and Brian Kyle ("Defendants Kyle and Lavelle"),

(collectively, referred to as "Defendants"), Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief can be granted. (Defs.' Mot. to Dismiss, ECF No. 26.) On

February 8, 2010, Plaintiff Office Depot, Inc. ("Plaintiff" or "Office Depot"), filed its own Motion to

Dismiss Defendants' counterclaims. (Counter-Def.'s Mot. to Dismiss, ECF No. 29.) For the following

reasons, the court grants in part and denies in part Defendants' Motion to Dismiss. (ECF No. 26.) Further,

the court grants Plaintiff's Motion to Dismiss Defendants' counterclaims. (ECF No. 30.)

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a Delaware Corporation engaged in the business of providing office products and office

services. (Compl. ¶ 9, ECF No. 1.) Defendants Kyle and Lavelle are Plaintiff's former employees who,

as managers, were responsible for marketing, selling, and servicing the office supply needs of small and

medium–sized companies. (*Id.* ¶ 15.) As a Major Accounts Business Development Manager, Kyle was responsible for procuring, maintaining and servicing large accounts in the Northeast Ohio area. (*Id.* ¶ 32.) As a Territory Development Manager, Lavelle was responsible for procuring, maintaining and servicing medium-sized accounts in the Akron, Canton, and Youngstown, Ohio areas. (*Id.* ¶ 33.)

In their capacity as employees and managers, Kyle and Lavelle had general access to confidential proprietary information and trade secrets developed and used by Office Depot, including, but not limited to, financial information, sales information, pricing models, and customer lists. (*Id.* ¶ 16.) Plaintiff has promulgated policies designed to protect this information, such as Plaintiff's Code of Ethical Behavior, Confidentiality Policy, Information Security Handbook, Global information Security Policy and System Password Security. (*Id.* ¶ 17.) Plaintiff limits access to such information depending on the information's relative business value or sensitivity, and the particular employee's need to access such information. (*Id.*)

Further, Plaintiff requires all sales employees, including sales managers, to execute a written Employee Agreement providing for the protection and continued confidentiality of Plaintiff's Information and trade secrets both during and after their employment. (*Id.*) Kyle executed the Employee Agreement when he was hired as an Account Manager in March of 2003. (*Id.* ¶ 19, Ex. 1.) Lavelle executed the Employment Agreement when he was hired as a Business Development Manager in April of 2006. (*Id.* ¶ 20, Ex. 2.) In these positions, Kyle and Lavelle had unfettered access to virtually all of Plaintiff's confidential and proprietary information. (*Id.* ¶ 34.)

Both of the Employment Agreements contained non-competition, non-solicitation, and non-disclosure-of-confidential-information provisions governing post-employment behavior. (*Id.* ¶¶ 19–27.) The non-competition provision prohibited Defendants Kyle and Lavelle, during the period of employment

-2-

and for six months thereafter, from working for or engaging in any business relations with Plaintiff's competitors within any geographical area in which Plaintiff or its subsidiaries engage or plan to engage in business. (*Id.* ¶ 21.) Similarly, the non-solicitation provision prohibited Defendants from soliciting Plaintiff's customers or interfering with Plaintiff's business relationships during the period of employment and for a period of six months following termination of their employment. (*Id*. ¶ 22.) In the event of a breach, the Agreement tolled the six-month period until the breach or violation is duly cured. (*Id.* ¶ 23.) Finally, the non-disclosure of confidential information provision prohibited Defendants from disclosing the Plaintiff's confidential information to third parties without the Plaintiff's prior written consent. (*Id.* ¶ 25.) Defendants' agreements provided that they were to return all confidential and proprietary information upon termination of their employment. (*Id.* ¶ 26.)

In June of 2009, Defendants Kyle and Lavelle voluntarily resigned from Plaintiff's corporation and did not disclose that they had been hired by one of Plaintiff's competitors, IOP. (*Id.* ¶ 30.) Defendant IOP is an office supply company with its principal place of business in Maryland. (*Id.* ¶¶ 46–47.) Plaintiff alleges that until recently, IOP had not engaged in any business in the State of Ohio. (*Id.* ¶ 47.) Plaintiff alleges that Kyle, prior to his resignation, copied, downloaded and emailed to his personal e-mail address and to Lavelle, various confidential documents . (*Id.* ¶ 37.) Plaintiff further alleges that prior to Defendants' resignation, Defendants had begun forwarding confidential information and trade secrets to IOP, and that once in the employ of IOP, Defendants began or continued to solicit Plaintiff's customers. (*Id.* ¶¶ 39–40.) Plaintiff learned of Defendants' alleged violations of their Employee Agreements in October of 2009. (*Id.* ¶ 43.) On October 14, 2009, Plaintiff sent both Kyle and Lavelle a letter reminding them of their contractual obligations, to which only Kyle responded. (*Id.* ¶¶ 44–45, Ex. 3, 4.) Further, on October 15,

-3-

2009, Plaintiff notified IOP that Kyle and Lavelle had binding contracts with Plaintiff prohibiting them from working for a competitor, appropriating confidential information and trade secrets, and contacting and soliciting Plaintiff's customers. (*Id.* ¶ 49, Ex. 5.)

On December 1, 2009, Plaintiff filed its Complaint, asserting various statutory and common-law claims against the Defendants, specifically: breach of contract against Kyle and Lavelle (Count One); common law and statutory misappropriation of trade secrets against all Defendants (Count Two); tortious interference with contract against IOP (Count Three); unjust enrichment against all Defendants (Count Four); breach of duty of loyalty, good faith and fair dealing against Kyle and Lavelle (Count Five); and tortious interference with business relations against all Defendants (Count Six).

On January 15, 2010, Defendant IOP and Defendants Kyle and Lavelle separately filed their Answer to Plaintiff's Complaint and raised a counterclaim against Plaintiff for tortious interference with prospective business relations (Counterclaim One). (Def. IOP's Answer and Countercl., ECF No. 24; Defs. Kyle and Lavelle's Answer and Countercl., ECF No. 25.)[1] Further, Defendants collectively filed their Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). (Defs' Mot. to Dismiss, ECF No. 26.) Defendants moved to dismiss Counts Three, Four, Five, and Six in their entirety, and Count Two to the extent it includes a common law trade secret misappropriation claim. (Defs' Mem. Supp. Mot. to Dimiss 1–2, ECF No. 26.) The sole ground asserted for dismissal is that these claims are displaced and preempted by the Ohio Uniform Trade Secret Act ("OUTSA"). (*Id.*) On February 8, 2010, Plaintiff filed a Memorandum in Support of its Motion to Dismiss Defendants' Counterclaim. ( Pl. Mem. Supp. Mot. to

---

[1]    As Defendant IOP's and Defendants Kyle and Lavelle's Counterclaims are identical in substance, the court addresses them jointly.

-4-

Dismiss, ECF No. 29.) The court will consider both Defendants' and Plaintiff's respective Motions to Dismiss.

## II.  LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must determine the legal sufficiency of the plaintiff's claim. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). *See also*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (clarifying the legal standard for a Rule 12(b)(6) motion to dismiss); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–50 (2009) (same).

In making this determination, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations within as true, and determine whether the complaint possesses "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id*.

For this analysis, a court may look beyond the allegations contained in the complaint to exhibits attached to or otherwise incorporated in the complaint, all without converting a motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.

1997).  Ultimately, this determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.

## III. LAW AND ANALYSIS

### A. Preemption of Common-Law Claims Under the OUTSA

Plaintiff's Complaint asserts common-law claims for: (1) misappropriation of trade secrets (Count Two); (2) tortious interference against Defendant IOP (Count Three); (3) unjust enrichment against all Defendants (Count Four); (4) breach of duty of loyalty, good faith and fair dealing against Defendants Kyle and Lavelle (Count Five); and (5) tortious interference with business relations against all Defendants (Count Six). (Compl., ECF No. 1.) Defendants contend that Plaintiff's five common-law claims are preempted by Ohio Revised Code § 1333.6 because Plaintiff's claims "are based on the same operative facts that give rise to Office Depot's statutory claim for misappropriation of trade secrets." (Defs. Mem. Supp. 2.) Plaintiff responds that these claims are not preempted because the "'gist' of every tort claim is not based on the same operative facts as its statutory misappropriation claim. Instead, they also involve the procurement of Kyle's and Lavelle's breaches of the Non-Competition Agreements, improper solicitation of Office Depot's (current and prospective) customers and breach of loyalty when Kyle and Lavelle stalled on closing deals during their employment with Office Depot." (Pl.'s Br. in Opp'n 4, ECF No. 31.)

The UTSA, as adopted by Ohio, provides a cause of action for the misappropriation of trade secrets. O.R.C. §§ 1333.61–1333.63. *See also  Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F. Supp. 2d 722, 729 (N.D. Ohio 1999) ("The policy reasons for [the UTSA] affording protection to these commercial intangibles are to prevent exploitation by reprehensible business methods and to encourage

-6-

innovation."). Section 1333.67(A) of the OUTSA expressly preempts "conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." The purpose of UTSA's preemption provision is to create an exclusive remedy for misappropriation of trade secrets, thereby "prevent[ing] inconsistent theories of relief for the same underlying harm." *Smith Ham & Prods. Co. v. Portion Pac*, 905 F. Supp. 346, 348 (E.D.Va. 1995). Section 1333.67(B)  exempts from preemption:

> (1)  Contractual remedies, whether or not based on misappropriation of a trade secret;
>
> (2)  Other civil remedies that are not based on misappropriation of a trade secret;
>
> (3) Criminal remedies, including those in other sections of this chapter, whether or not based on misappropriation of a trade secret.

In construing similar statutory provisions, courts have reached varying interpretations regarding the scope of preemption. First, courts have disagreed regarding whether claims based on misappropriation of information not rising to the level of "trade secret" status are nevertheless preempted under the UTSA. *Compare Firetrace USA, LLC v. Jesclard*, --- F. Supp. 2d ----, 2010 WL 7154794, at *3 (D. Ariz. July 30, 2010) (holding "[Arizona] UTSA preempts all Plaintiffs' common law tort claims based on the misappropriation of information, whether or not that information meets the statutory definition of a trade secret") *with Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., Inc.*, 191 F. Supp. 2d 652, 659 (E.D. Va. 2002) (holding that, "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the VUTSA"). The dominant interpretation is that the preemption provision displaces any antecedent misappropriation-of-trade-secret claim and, further, any claim regarding "theft or misuse of confidential proprietary, or otherwise secret information falling short of trade secret (e.g., idea misappropriation,

-7-

information piracy, theft of commercial information, etc.)." *Allied Erecting and Dismantling Co. v. Genesis Equip. & Mfg.*, 649 F. Supp .2d 702, 720 (N.D. Ohio 2009).

Second, and most pertinent for the purposes of this case, courts have struggled with the issue of whether the UTSA displaces common-law claims whose factual allegations may touch upon misappropriation-of-trade-secret facts but are intended to address another legal harm. *Hauck Mfg. Co. v. Astec Indus., Inc.,* 375 F. Supp. 2d 649, 654 (E.D. Tenn.2004) ("the scope of the [UTSA] is reflective of the marked ambiguity and inconsistency characterizing the language used in the various state and federal court opinions interpreting [the statute].") The majority interpretation is that common-law claims are preempted only to the extent that they are based on misappropriation-of trade-secrets facts. *See, e.g.*, *Allied*, 649 F. Supp. 2d at 724 ("[W]here a claim for breach of fiduciary duty has an independent factual basis, which is not solely dependent on misappropriation-of-trade-secret facts, courts have concluded there is no preemption. . . . Here, however, Allied's breach-of-fiduciary-duty claim has no independent factual basis; rather, the claim is solely dependent upon misappropriation-of-trade-secret facts); *Hauck Mfg.*, 375 F. Supp. 2d at 659–60 (finding tortious interference with contract claim preempted to extent it is based on confidentiality duty, yet preserving portion of claim involving conflict of interest agreement); *Powell Prods. v. Marks,* 948 F. Supp. 1469, 1474–75 (D. Colo. 1996) (preempting plaintiff's claim for conversion to extent it relied on misappropriation-of-trade-secret allegations, yet maintaining a portion of the claim for conversion of the plaintiff's "physical items"); Under this approach, courts parse the allegations in support of a claim to determine whether the plaintiff has alleged the "same facts" or "same proof" in support of the common law claims. *Allied*, 649 F. Supp. 2d at 721. Thus, a non-UTSA claim

-8-

survives only if plaintiff alleges factual matter beyond misappropriation-of-trade- secrets or other information.

The Ohio Supreme Court has yet to speak to the scope of the OUSTA's preemption clause. In the absence of a decision from the State's highest court on an issue of state law, this court must anticipate how the Ohio Supreme Court would rule with reference to the decisions of the state's intermediate courts. *Melson v. Prime Ins. Syndicate, Inc.*, 429 F.3d 633, 636 (6th Cir. 2005). Intermediate appellate courts in the State of Ohio have applied the majority view presented above and thus this court anticipates that the Ohio Supreme Court would similarly adopt this standard. *See, e.g.*, *Rogers Indus. Prods. v. HF Rubber Mach.*, 936 N.E.2d 122, 130 (Ohio Ct. App. 9 Dist. 2010) (finding O.R.C. § 1333.67(A) "has been interpreted to bar claims that are based solely on allegations of misappropriation of trade secrets or other confidential information" and dismissing claims based only on alleged misappropriation and misuses of confidential and proprietary information); *Columbus Steel Castings Co. v. King Tool Co.*, 2008 WL 5104786, *3 (Ohio Ct. App. 10 Dist. Dec. 4, 2008) (finding unjust enrichment claim was displaced by UTSA because claim "was based on the allegation of . . . misappropriation").

In their Motion to Dismiss, Defendants advance a much more expansive reading of the majority view as discussed in *Allied*, 649 F. Supp. 2d at 720-22. Defendants argue that, "under *Allied* and *Hauck*, any of Plaintiff's claims that would also, in part or in whole, constitute misappropriation of a trade secret under the OUSTA are preempted." (Defs' Rep. to Pl.'s Opp'n 2–3, ECF No. 40.) Neither of these cases, however, support the view the OUSTA preempts claims in their entirety even if they are based on allegations of misappropriation *in part* only. In *Hauck*, the standard adopted by the court was that

-9-

"Plaintiff's non-UTSA claims . . . will be preempted if, as plead, they would succeed or fail dependent on proof [defendants] acquired, disclosed, or used Plaintiff's trade secrets or otherwise confidential information." 375 F. Supp. 2d at 658. Applying this standard, the court found that the UTSA, as adopted by Tennessee, preempted in their entirety claims for civil conspiracy, conversion, and unjust enrichment because they were predicated on misappropriation of trade secrets or confidential information *only*. *Id.* at 660-62. However, the court partially preempted a claim for tortious interference with contract because the complaint alleged both breach of a confidentiality provision and a conflict of interest provision. *Id.* at 659-660. With respect to the confidentiality provision, the court found that the claim was preempted because "plaintiffs alleging theft or misuse of their ideas, data, or other commercially valuable information are confined to the single cause of action provided by the UTSA." *Id.* at 659 However, the court found that the conflict of interest agreement "is a creature of a different sort" and that "neither the contract at issue nor the nature of the alleged breach have anything to do with trade secrets or confidential information. Plaintiff effectively claims [defendant] began working with or for [the competitor] while still employed by Plaintiff." *Id.* at 660.

Similarly, the court in *Allied* parsed the plaintiff's allegations and dismissed the plaintiff's common-law claims because they rested exclusively on allegations of misappropriation. *Allied*, 649 F. Supp. 2d at 722–24. In making this determination, the *Allied* court applied a "same facts" standard. *Id.* at 721. Under the "same facts" standard, UTSA preempts a common law claim when the claim's factual allegations are a "restatement of the same operative facts" underlying a misappropriation of trade secrets claim. *Id.* at 722. The standard exempts common-law claims that allege misappropriation of trade secret facts yet possess

-10-

an "independent factual basis . . . not *solely* dependent" on the UTSA claim. *Allied*, 649 F. Supp. 2d at 724 (emphasis added).

Although the *Allied* decision makes clear that UTSA will not displace a common-law claim supported by an "independent factual basis," it does not provide a thorough analysis regarding hybrid claims because the claims before it were simply restatements of the plaintiff's UTSA claim. *Id.* at 724. Yet other courts confronted with this type of hybrid claim have upheld the portion of the common-law claim supported by an independent basis and dismissed the rest of the claim based on misappropriation-of-trade secrets. *See, e.g.*, *Thermodyne Food Serv. Prod., Inc., v. McDonald's Corp.*, 940 F. Supp. 1300, 1309 (N.D. Ill. 1996) ( "To the extent that the breach of fiduciary duty claim is premised on conduct other than the misappropriation of Thermodyne technology, the claim survives."); *MG Capital LLC v. Sullivan*, 2001 WL 1609382, at *4 (N.D. Ill. Dec. 17, 2001) ("[T]he breach of fiduciary claim based on the misappropriation of trade secrets is preempted by the ITSA. However, the claim survives as to the allegations not based on misappropriation of trade secrets-competing against MG Capital while still in its employ.").

The court believes that this partial preemption approach provides clearer guidance for courts applying the *Allied* "same facts" standard to a common-law claim that simultaneously raises misappropriation facts. As an analytical tool, partial preemption allows a court to parcel out the common law theory designed to remedy a separate wrong from misappropriation of trade secrets. This approach abides by the *Allied* "same facts" standard because it allows a court to preempt the portion of a common-law claim that "simply restate[s] the same operative facts" of a UTSA claim while maintaining the rest of the claim that is supported by an "independent factual basis." *Allied*, 649 F. Supp. 2d at 723–24. Finally,

-11-

this approach fulfills the OUTSA's purpose of preempting any "conflicting tort, restitutionary, and other laws . . . for misappropriation of a trade secret," O.R.C. §1333.67(A), while preserving any "other civil remedies that are not based on misappropriation of a trade secret" facts. O.R.C. §1333.67(B)(2).

Thus, a court applying the *Allied* "same facts" standard must first determine whether the facts supporting the plaintiff's common-law claim are "merely a restatement of the same operative facts" of plaintiff's UTSA claim. 49 F. Supp. 2d at 722. If the common-law claim is "solely dependent upon misappropriation-of-trade-secret facts," then the claim is preempted by UTSA. *Id*. at 724. Yet if the common-law claim possesses an "independent factual basis" separate from the factual allegations establishing a UTSA claim, then the portion of the claim supported by an independent factual basis survives preemption.

### Plaintiff's Claims

Having set forth the standard for preemption of common law claims under the OUTSA, the court applies this analysis to each claim in turn.

#### (i) Misappropriation of Trade Secrets against All Defendants  (Count Two)

The UTSA preempts Count Two of Plaintiff's Complaint—misappropriation of trade secrets against all Defendants—only to the extent that it pleads a common law misappropriation-of-trade-secrets claim. (Compl. ¶¶ 65–75, ECF No. 1.) This claim for misappropriation-of-trade-secrets is the type of claim the OUTSA explicitly preempts. O.R.C. § 1333.67(A). Thus, this court grants Defendants' Motion to Dismiss Count Two's common law misappropriation claim.

#### (ii) Tortious Interference against Defendant IOP (Count Three)

-12-

Count Three, tortious interference against Defendant IOP, survives an OUTSA preemption defense in part only. (Compl. ¶¶ 76–79.) Defendants contend that OUTSA preempts Plaintiff's tortious-interference-with-contract claim because Defendant IOP's alleged interference stems from Kyle and Lavelle's misappropriation of Plaintiff's trade secrets. (Defs.' Reply to Pl.'s Opp'n 7.) However, Plaintiff's claim for tortious interference possesses an "independent factual basis" separate from Plaintiff's UTSA claim. Count Three states, in pertinent part, that "[Defendant] IOP tortiously interfered with the Employee Agreement [between Plaintiff and Defendants Kyle and Lavelle] by encouraging, instructing, ratifying and/or directing Kyle and Lavelle to breach the Employee Agreement." (Compl. ¶ 78.) In its common factual allegations, Plaintiff contends that Kyle and Lavelle "commenced competing against Office Depot while they were still in Office Depot's employ." (*Id.* ¶ 38.) Upon learning that Kyle and Lavelle were possibly violating their respective agreements, Plaintiff "notified IOP that Kyle and Lavelle had binding contracts with Office Depot, which prohibit them from: (1) working for a competing business, (2) divulging and using Office Depot's trade secret [sic] and confidential information, and (3) contacting and soliciting Office Depot's customers." (*Id.* ¶ 49.)

Applying the *Allied* standard, Count Three is not a "restatement of the same operative facts" of Plaintiff's OUTSA claim. Count Three alleges that the tortious interference by Defendant IOP derives from Defendant IOP having induced Defendants Kyle and Lavelle to breach their Employee Agreement with Plaintiff, which included not only a confidentiality clause but also a non-compete provision. This "independent factual basis" is separate from Plaintiff's UTSA allegation that Defendants misappropriated Plaintiff's trade secrets. The UTSA does not preempt Count Three in its entirety and thus this court grants Defendants' Motion to Dismiss Count Three in part only.

-13-

### (iii) Unjust Enrichment against all Defendants (Count Four)

The OUTSA preempts Count Four of Plaintiff's Complaint, Unjust Enrichment, against all Defendants, only to the extent that Count Four is premised on misappropriation-of-trade-secret facts. Count Four states, in pertinent part, "Defendants have utilized Office Depot's confidential and proprietary information and trade secrets for their financial benefit and to the detriment of Office Depot." (Compl. ¶ 81.) Count Four continues, "[Defendants] have also converted Office Depot's business opportunities. Defendants' actions [ ] constitute actionable unjust enrichment." (*Id*. ¶¶ 81–82.) Defendants argue that Count Four "necessarily involve[s] the claimed unauthorized use of Plaintiff's confidential client information." (Defs.' Reply to Pl.'s Opp'n 4.) Plaintiff argues that Count Four is not solely based on their UTSA claim. (Pl.'s Opp'n to Defs.' Mot. to Dismiss 4, ECF No. 31.) Plaintiff argues that Count Four is also premised on Defendants conversion of business opportunities which will require proof of a different set of facts than their statutory misappropriation claim. (*Id*.) Plaintiff contends that Count Four's different set of facts include Defendants Kyle's and Lavelle's violations of contractual obligations and their common law duty of loyalty. (*Id*. at n.4 (arguing that Count Four is "also premised on the fact that Kyle and Lavelle have contractual obligations to not solicit Office Depot's customers and have common law duties of loyalty . . . to not stall on closing deals or divert [ ] customers to IOP.").)

Count Four must be dismissed to the extent that it alleges unjust enrichment based on Defendants' misappropriation of trade secrets. (Compl. ¶ 81 (alleging "Defendants have utilized Office Depot's confidential and proprietary information and *trade secrets* for their financial benefit" (emphasis added)).) UTSA expressly displaces this type of "restitutionary" remedy. O.R.C. § 1333.67(A). Yet Count Four survives UTSA preemption inasmuch as it pleads an "independent factual basis" of conversion of business

-14-

opportunities not based on Plaintiff's trade secrets. Consequently, this court grants Defendant's Motion to Dismiss Count Four in part only.

### (iv) Breach of Duty of Loyalty, Good Faith and Fair Dealing against Defendants Kyle and Lavelle (Count Five)

The OUTSA preempts Count Five of Plaintiff's complaint to the extent Count Five is premised on misappropriation-of-trade-secret facts . (Compl. ¶¶ 85–92.) Count Five alleges that the breach of the duties of loyalty and good faith and fair dealing occurred when Defendants Kyle and Lavelle: (1) "divulge[d] confidential information to [Plaintiff's] competitors during their employment" (*Id.* ¶ 87); and (2) "intercept[ed], convert[ed], or redirect[ed] current and prospective customers of [Plaintiff] to its competitors or work[ed] for [Plaintiff's] competitors during their employment." (*Id.* ¶ 88.) Defendants contend that "Plaintiff will be unable to prove [Count Five] without also showing that Defendants used confidential Office Depot customer information in an unauthorized manner." (Defs.' Reply to Pl.'s Opp'n 5.)

Count Five must be dismissed to the degree that it alleges Defendants' breach of common-law duties derived from their disclosure of confidential information as this merely restates the "same operative facts" as Plaintiff's UTSA claim, specifically that Defendants Kyle and Lavelle disclosed confidential information (or trade secrets) to Plaintiff's competitor (IOP). (Compl. ¶¶ 68-69.) Plaintiff, however, also bases Count Five on conduct not involving misappropriation of facts or unauthorized use of customer information. The second portion of Count Five states that Defendants Kyle and Lavelle breached their common-law duties owed to Plaintiff when they "intercept[ed], convert[ed], or redirect[ed]" Plaintiff's current and prospective customers to IOP. (*Id.* ¶ 88.)   Plaintiff claims that these actions describe

-15-

Defendants' "[f]ailure to close on deals, and attempts to divert and redirect [Plaintiff's] customers to IOP." (Pl.'s Opp'n to Defs.Mot. to Dismiss 9.)  This portion of Count Five describes an "independent factual basis, which is not solely dependent" on Plaintiff's UTSA claim and therefore survives the Defendant's preemption defense. *Allied*, 649 F. Supp. 2d at 724. Therefore, the court grants Defendants' Motion to Dismiss Count Five in part only.

### *(v) Tortious Interference with Business Relations against All Defendants (Count Six)*

Finally, the OUTSA preempts Count Six of Plaintiff's Complaint, tortious interference with business relations against all Defendants, to the extent that it alleges misappropriation-of-trade secrets facts. (Compl. ¶¶ 93-95.) Count Six states, in pertinent part, "[b]y [Defendants] aforesaid actions[2], Defendants . . . have/and or will intentionally, maliciously and without justification interfered with [Plaintiff's] current and prospective contractual and /or business relationships with clients and customers." (*Id.* ¶ 94.) Reading the Complaint in the light most favorable to the Plaintiff, this incorporation would include factual allegations of misappropriation and any other allegation not based on misappropriation, i.e. allegations of redirecting Plaintiff's customers to Defendant IOP. Consequently, Count Six survives preemption to the extent it derives from an "independent factual basis" separate from Plaintiff's UTSA factual allegations. Indeed, Plaintiff contends that Count Six's "independent factual basis" includes Plaintiff's "business contracts or relations with its customers" and Defendants interference with these relations. (Pl.'s Opp'n to Defs.' Mot. to Dismiss 10.) Due to Count Six's incorporation paragraph, this court can reasonably infer an

---

[2]     Count Six's "aforesaid actions" incorporate the Complaint's allegations pled prior to Count Six. *Id.*, ¶¶ 93, 94.

"independent factual basis" from the Complaint's other pleadings, paragraphs one through ninety-two. (*E.g.*, Compl. ¶¶ 40 ("[Defendant] Kyle and Lavelle became employees of IOP and began (and/or continued) soliciting [Plaintiff's] clients and customers."); 41 ("[Plaintiff] recently learned that at least three (3) of its customers were solicited by Kyle and/or Lavelle."); and 50 ("[Defendant] IOP has and continues to encourage, direct, participate, ratify, and benefit from [Defendants] Kyle's and Lavelle's breaches of the Employee Agreement.").) This court grants Defendants' Motion to Dismiss Count Six in part only.

### B. Defendants' Counterclaims - Tortious Interference With Business Relations

Defendants' Counterclaims allege that Plaintiff "knew of Kyle and Lavelle's valuable employment relationship with Impact and their prospective business relationships with existing and potential customers in Northeast Ohio," and that despite such knowledge "Office Depot improperly interfered with such employment relationships and Impact's valuable current and prospective customer relationships." (Defs.' Countercls. ¶¶ 22–23, ECF Nos. 24 and 25.) Defendants assert that Plaintiff's tortious conduct consisted of: (1) decreasing the pay and benefits of Kyle and Lavelle while increasing their production and attainment goals; (2) encouraging Defendants Kyle and Lavelle to resign and work for competing independent office supply companies; (3) assuring Defendants Kyle and Lavelle that Plaintiff would not enforce the Employment Agreement against them and routinely failing to enforce similar restrictive covenants in other cases; and (4) delaying the commencement of this lawsuit for six months after Defendants Kyle and Lavelle's resigned. (Defs.' Opp'n to Pl.'s Mot. to Dismiss 3–4, ECF No. 41 (citing to Defs.' Countercls, ¶¶ 9–12, 15–16, 20, 23–28.) In defense, Plaintiff asserts that it possesses an absolute privilege to protect its legal interest in enforcing Kyle and Lavelle's employment contracts by filing this suit. (Pl. Mem. Supp. Mot. to Dismiss 7, ECF No. 29.) Further, Plaintiff contends that privilege issues aside, Defendants have

failed to plead sufficient facts to state a plausible claim for tortious interference with prospective business relations. (*Id.* 6.) As an alternative ground for dismissal, Plaintiff argues that IOP lacks standing to maintain its counterclaim because it has failed to register with the State of Ohio as a foreign limited liability company. (*Id.* 9–11.)

Under Ohio law, a claim for tortious interference with prospective business relations exists when: (1) a business relationship or contract existed; (2) the wrongdoer had knowledge of the relationship or contract; (3) the wrongdoer intentionally and improperly acted to "prevent a contract formation, procure a contractual breach, or terminate a business relationship"; (4) the wrongdoer has no privilege to act in this manner; and (5) damages resulted from wrongdoer's conduct. *Brookeside Ambulance v. Walker Ambulance Serv.*, 678 N.E.2d 248, 252 (Ohio Ct. App. 1996); *Barilla v. Patella*, 760 N.E.2d 898, 904 (Ohio Ct. App. 2001). The Ohio Supreme Court has enumerated factors that a court should consider in determining whether the alleged wrongdoer's actions were improper or privileged:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Fred Siegel Co. v. Arter & Hadden*, 707 N.E.2d 853, 860 (Ohio 1999) (citing RESTATEMENT (SECOND) OF TORTS § 767 (1979)).

Even when viewed in the light most favorable to them, Defendants' allegations fall far short of stating a coherent, let alone plausible, claim for tortious interference with prospective business relations. As an initial matter, Defendants' allegations that Plaintiffs decreased Kyle and Lavelle's pay and benefits, increased their production and attainment goals, and encouraged them to resign and work for independent

-18-

office supply companies concern Kyle and Lavelle's conditions of employment *while at Office Depot* and have little to no bearing on the requisite elements of the tort, which occurs "when a person, without a privilege to do so, induces or otherwise *purposely causes a third person* not to enter into or continue a business relation with another, or not to perform a contract with another." *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) (emphasis added) (quoting *A & B-Abell Elevator Co. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995)); *see also Hadi v. State Farm Ins. Cos.*, No. 2:07-CV-60, 2008 WL 4877766, *4 (S.D. Ohio Nov. 12, 2008) ("A claim for tortious interference requires that the intermeddler intentionally act to interfere with the employment relationship between the plaintiff and his employer."); *Collins v. Allen*, No. 1:04-CV-572, 2005 WL 1073369, *3 (S.D. Ohio 2005) ("In the absence of any allegation that a third party initiated the end of its relationship with [plaintiff], no claim for tortious interference lies."); *Wright Safety Co. v. U.S. Bank*, 2009-Ohio-6428, 2009 WL 4653550, *7 (Ohio Ct. App. 9 Dist. Dec. 9, 2009) (dismissing claim for tortious interference where plaintiff failed to allege defendant contacted, interacted or interfered with plaintiff's prospective or current business relations). This court would have to make a number of inferential leaps to find that these allegations support a claim of purposeful interference with third-party business relations.

Second, Defendants' allegations that Office Depot has selectively enforced restrictive covenants in the past and that it delayed commencement of this lawsuit after Kyle and Lavelle's resignation, while bearing on the issue of privilege, do not without more, raise an inference that Office Depot is tortiously interfering with business relations through the instant lawsuit. Under certain circumstances, an individual may assert a privilege to interfere with the performance of a third-party contract. The law recognizes this

privilege where, in good faith, the individual claims that his or her legal right would be harmed by the performance of the contract. *See Wright v. Metrohealth Med. Ctr.*, 58 F.3d 1130, 1139 (6th Cir. 1995) ( "[I]n Ohio, one is privileged to purposely cause another not to perform a contract with a third person where he in good  faith is asserting a legally protected interest of his own, which he believes will be impaired or destroyed by the performance of the contract." (internal quotation marks omitted)); *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988) (stating that it is "well-recognized privilege of officers, directors, . . . , and creditors to interfere with contracts in the furtherance of their legitimate business interests" (internal quotation marks omitted)). Plaintiff has done so here, arguing it has an absolute privilege to sue for enforcement of its contracts. (Pl.'s Mem. Supp. Mot. to Dismiss 7.) Defendants argue both that Office Depot possesses no privilege given its "misleading statements to Kyle and Lavelle, its consistent waiver of its rights under the purported agreement and considerable delay in filing this suit," and that "a fact question exists as to [counter] defendant's defense of justification or privilege, warranting a continuation of the claim past the dispositive motion." (Defs.' Br. Opp'n to Mot. to Dismiss 6.) That a fact question may exist with respect to the issue of privilege, however, does not relieve Defendants of their burden under federal pleading rules to allege sufficient facts with respect to the other elements of the tort. As explained above, Defendants have failed to sufficiently allege interference with third-party business relations, and accordingly, this court dismisses Defendants' Counterclaims. Having found that Defendants have failed to state a claim for tortious interference with prospective business relations, this court need not address Plaintiff's alternative ground for dismissal—that IOP lacks standing to maintain the counterclaim because it has not registered as a foreign limited liability company.

### III. CONCLUSION

For the foregoing reasons, the court grants in part and  denies in part Defendants' Motion to Dismiss Pursuant to Federal Rule 12(b)(6). (Defs.' Mot. to Dismiss, ECF No. 26.) Further, the court grants Plaintiff's Motion to Dismiss Defendants' Counterclaims. (Pl.'s Mot. to Dismiss, ECF No. 30.)

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

September 26, 2011

-21-