UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OFFICE DEPOT, INC., | ) | Case No.: 1:09 CV 2791 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| IMPACT OFFICE PRODUCTS, LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants | ) | ORDER |

Currently pending before the court is Plaintiff Office Depot, Inc.'s ("Office Depot") Motion for a Preliminary Injunction ("Motion"). (ECF No. 2.) Office Depot asks the court to enjoin former employees Patrick Lavelle ("Lavelle") and Brian Kyle ("Kyle") (collectively, "Individual Defendants") and competitor Impact Office Products ("Impact" or "IOP") from unfair competition in the Northeast Ohio office-supplies market. Office Depot alleges that Individual Defendants breached non-compete and non-solicitation clauses contained in their prior employment contracts with Office Depot. Also pending before the court is Defendants' Motion for Leave to File their Supplemental Memorandum in Support of their Objections to the Report and Recommendation. (ECF Nos. 80, 81.) For the following reasons, this court adopts in part the Report and Recommendation of Magistrate Judge Kenneth S. McHargh (ECF No. 68), and grants Plaintiff's Motion. (ECF No. 2.) Defendants' Motion is denied. (ECF No. 80.)

# I.  BACKGROUND

On December 1, 2009, Office Depot brought an action against Impact Office Products, LLC ("Impact") and Individual Defendants Patrick Lavelle ("Lavelle") and Brian Kyle ("Kyle") (collectively, "Individual Defendants") arising from alleged breaches of non-compete agreements signed by Kyle and Lavelle pursuant to their previous employment at Office Depot. (ECF No. 1.) Office Depot contemporaneously filed a Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 2.) On December 4, 2009, this court issued a temporary restraining order ("TRO") against all three Defendants, but it lapsed ten days later. (TRO, ECF No. 11.) The issue of whether a preliminary injunction should be granted was referred to Magistrate Judge Kenneth S. McHargh ("Judge McHargh"), who issued his Report and Recommendation (R&R) on December 30, 2010 (ECF No. 68), following hearings on October 7, 8, 26, and 27, 2010.

Judge McHargh found that after gaining five years' experience in sales at Pitney-Bowes, Kyle began work for Office Depot as an account manager in March, 2003; by late 2006 he held the title of Business Development Manager – Major Accounts for Northeast Ohio. (R&R, Findings of Fact ¶¶ 12-13.)  Lavelle also had prior sales experience when he arrived at Office Depot in March, 2006; in December, 2008, he became Territory Development Manager for the Akron-Canton-Youngstown territory.  (*Id.* ¶¶  15-16.)  Kyle's work involved accounts with annual purchases over $150,000; Lavelle's customers had annual purchases less than that amount. (*Id.* ¶¶ 13, 16.) Both Kyle and Lavelle signed non-compete agreements prohibiting them from (1) working for Office Depot competitors within any geographical area in which Office Depot engages or plans to engage in business for a period of six months following termination of their

- 2 -

employment with Office Depot; (2) soliciting any of Office Depot's customers for six months following termination of their employment from Office Depot; and (3) disclosing any confidential information without the prior written consent of Office Depot. (*Id.* ¶¶ 6–7, 9.) Further, the agreement required Kyle and Lavelle to return all confidential and proprietary information of Office Depot upon termination of their employment. (*Id.* ¶ 10.)

Working out of their homes as sales representatives, Individual Defendants "considered . . . business files and client accounts to be their personal property" up until their departures from Office Depot, orchestrated a week apart. (*Id.* ¶¶ 17–18, 53.) In April, 2009, Steve Stadell, a recruiter working for Impact, contacted both salesmen. (*Id.* ¶ 28.) On or about April 21, 2009, Impact asked for copies of Kyle and Lavelle's non-compete agreements. (*Id.* ¶ 33.) Upon reviewing the agreements, Impact acknowledged that the six-month non-compete period was "not that long" and that their own employment agreements impose twelve-month covenants. (*Id.* ¶ 34.) After reviewing the agreements, Impact represented to Kyle and Lavelle that it would "have their backs" in the event that Office Depot sought enforcement of the agreements. (*Id.* ¶ 35.)

On May 12, 2009, Lavelle provided Impact with a list of "Guaranteed Business" and a list of "Strong Possibilities" of business he thought he could bring with him to Impact from Office Depot. (*Id.* ¶ 36.) In the last few weeks of their employment, "Kyle and Lavelle stalled on closing deals on behalf of Office Depot, and were laying the groundwork to convert Office Depot customers to Impact." (*Id.* ¶ 47.) During the spring, and on his last day of employment on June 5, 2009, Kyle e-mailed to his personal e-mail address, and to Lavelle, Office Depot documents "containing pricing and other sensitive information," and indicated that they might be useful for Impact's purposes. (*Id.* ¶¶ 48–51.)

Despite having already signed with Impact, Individual Defendants concealed their future employment plans from Office Depot supervisors.  (*Id.* ¶¶ 52-59.) Prior to starting work at Impact, Kyle told his supervisor that he was probably going to spend time with his family and perhaps work for Iron Mountain, a document management company not in direct competition with Office Depot. (*Id.* ¶ 55–56.) Similarly, despite having already signed with Impact, Lavelle informed his supervisor that he was considering a couple of opportunities, including investing in a restaurant business in North Carolina. (*Id.* ¶ 58.) He did not mention that he would be working for a direct competitor starting the following Monday. (*Id.* ¶ 59.)

Kyle and Lavelle began working for Impact on June 15, 2009. (*Id.* ¶¶ 54, 57.) Impact had no previous presence in Ohio, and stood to save considerable startup and marketing costs by hiring Individual Defendants; Impact conceded that it knew it would seek to convert Office Depot customers. (*Id.* ¶¶ 29–32.) As sales representatives for Office Depot, Individual Defendants had relationships, documents, and familiarity with the industry that gave them a competitive advantage when they went to work for Impact. (*Id.* ¶¶ 49–51, 60.) In the first six months of their employment with Impact, Kyle and Lavelle solicited at least forty-four Office Depot customers. (*Id.* ¶¶ 62–65.) Many of those customers switched their business to Impact and continue up to the present to be serviced by Kyle and Lavelle and their colleagues. (*Id.* ¶ 65.)

In October 14, 2009, after Office Depot realized that it was competing with its former employees, it sent cease-and-desist letters to Kyle and Lavelle reminding them of their contractual obligations. (*Id.* ¶ 67.) The following day, Office Depot sent a letter to Tim Flynn, President of Impact, notifying him of the existence of the non-compete agreements. (*Id.*) Impact did not act on or respond to the letter. (*Id.* ¶ 71.) Individual Defendants' former supervisor David

- 4 -

Fisher ("Fisher") testified to Office Depot's loss of business during the initial months after Kyle and Lavelle left, due to their alleged violation of the non-compete agreement. (*Id.* ¶¶ 84–85.) He also testified that Office Depot might be able to repair that injury if the six-month period of noncompetition were enforced through an injunction: "It will give us a chance to go back in and hopefully re-secure this business that we once had."  (*Id.* ¶ 85.)

On December 30, 2010, Judge McHargh issued a Report and Recommendation finding that Office Depot had "a substantial likelihood of success on the breach of contract claims concerning the Non-Compete Agreements," and recommended an injunction of six months' duration against certain business activities of Defendants in Northeast Ohio. (*Id.* ¶ 59 and p. 46–47.)  All Defendants filed Objections to the Report, and Office Depot filed a Response.  (ECF Nos. 70, 71, 73, 74.) Kyle and Lavelle and Impact filed Replies. (ECF Nos. 75, 76, 77, 78.)

## II. PRELIMINARY INJUNCTION STANDARD

The grant of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 is an extraordinary remedy, and the moving party carries the burden of proving that the circumstances clearly demand it. *See Penetone Corp. v. Palchem Inc.*, 627 F. Supp. 997, 1004 (N.D. Ohio 1985). A district court uses equitable principles of federal law in determining whether to issue a preliminary injunction. *See S. Milk Sales v. Martin*, 924 F.2d 98, 102 (6th Cir. 1990). In doing so, the court considers four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.  *Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000); *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross*

*& Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997). The court considers these factors in

aggregate, "balanced according to their relative strengths." *Fed. Sav. & Loan Ins. Corp. v. Quinn*,

711 F. Supp. 366, 376 (N.D. Ohio 1989), *vacated on other grounds*, 922 F.2d 1251 (6th Cir.

1991) (citing *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985)).  The strength of

the likelihood of success on the merits is inversely proportional to the amount of irreparable harm

that will be suffered if an injunction does not issue. *Baker v. Adams County/Ohio Valley School*

*Bd.*, 310 F.3d, 927, 928 (6th Cir. 2002). A particularly strong showing of likely success on the

merits may allow for an injunction despite a weaker showing of irreparable harm, and vice versa.

*Cabot Corp. v. King*, 790 F. Supp. 153, 155 (N.D. Ohio 1992). Although the court must engage

in this balancing test, a plaintiff must always demonstrate some irreparable injury before a

preliminary injunction may issue. *Basicomputer Corp. v. Scott*, 791 F. Supp. 1280, 1285 (N.D.

Ohio 1991), *aff'd*, 973 F.2d 507 (6th Cir. 1992).

When considering the first factor, likelihood of success on the merits, the court must

anticipate the outcome of the underlying lawsuit. Hence, the court applies the substantive law that

will be used at trial.  In an action for breach of a non-compete agreement, the contract's choice-

of-law clause dictates the choice of law used at trial. *See Tele-Save Merch. Co. v. Consumers*

*Dist. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (holding that in diversity actions, federal district

courts in Ohio adhere to contractual choice-of-law clauses "unless the law of the chosen state

sought to be applied is concededly repugnant to and in violation of the public policy of [Ohio]")

(citing *Jarvis v. Ashland Oil, Inc.*, 478 N.E.2d 786, 789 (Ohio 1985)).

At the preliminary injunction stage, a district court is not required to resolve "doubtful

or difficult questions of law or disputed questions of fact." *Neveux v. Webcraft Tech.*, 921 F.

Supp. 1568, 1572 (E.D. Mich. 1996) (citing *Int'l Molders' and Allied Workers' Local Union v. Nelson*, 799 F.2d 547, 551 (9th Cir.1986)); *see also Sargent v. Am. Greetings Corp.*, 588 F. Supp. 912, 925 (N.D. Ohio 1984) (denying a motion for preliminary injunction in part because genuine issues of material fact existed). The factual findings of a court deciding on a motion for preliminary injunction are not binding in the underlying lawsuit. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

In this case, the court considers Magistrate Judge Kenneth S. McHargh's Report and Recommendation on the question of whether a preliminary injunction should be issued against all Defendants. (R&R, ECF No. 68.) Because Defendants filed Objections to the Report, the court undertakes a *de novo* review pursuant to Federal Rule of Civil Procedure 72(b), and must "weigh the evidence for itself and make an independent determination of the dispositive issues." *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985).

### III.  ANALYSIS

The court's *de novo* review is guided by the four factors that govern a federal court's decision to issue a preliminary injunction. The court addresses each factor in turn.

#### A.  Likelihood of Success on the Merits

##### 1. Office Depot's Breach of Contract Claims

To prevail on its motion for a preliminary injunction, Plaintiff must demonstrate a likelihood of success on the merits with a showing of clear and convincing evidence on each element of its claims. *Unique Paving Materials Corp. v. Fargnoli,* No. 1:07 CV 2501, 2007 WL 2902909 (N.D. Ohio, Oct. 2, 2007) (citing *Jacono v. Invacare Corp.*, No. 86605, 2006 WL 832451 (Ohio Ct. App. 8 Dist. Mar. 30, 2006)). Judge McHargh found that Office Depot had a

substantial likelihood of success on the breach of contract claims concerning the non-compete agreements.  (R&R, Conclusions of Law ¶ 59.) Specifically, Judge McHargh found that: (1) the agreements protect legitimate business interests, including substantial relationships with specific or prospective customers, as is required for enforcement under Florida state law, (*Id.*  ¶¶ 7–12); (2) the non-compete provisions are reasonable in geographic scope and duration, (*Id.* ¶¶ 13–18); (3) and IOP is a direct competitor of Office Depot, and as such, the agreements apply to the Individual Defendants' employment with IOP. (*Id.* ¶¶ 19–24.)

In its response to the Report, Impact objects to Judge McHargh's interpretation of the agreements. (Def. Impact Objections 15–24, ECF No. 70.) Impact argues that Judge McHargh's analysis of the non-compete agreements is erroneous for two reasons: (1) Impact was not a competitor embraced by the language of the non-compete agreements, (*Id.* 15-18); and (2) Office Depot did not show that enforcement of the non-compete agreements would protect a legitimate business interest, specifically customer relationships and confidential business information.  (*Id.* 18–24.) There is no dispute about Judge McHargh's findings that the agreements were validly executed and that they specified a non-compete period of reasonable duration. (R&R, Conclusions of Law ¶¶ 6, 15.) Thus, the court focuses on Defendants' arguments regarding whether Kyle and Lavelle breached their non-compete agreements.

Each contract contained a choice-of-law provision dictating that all issues and questions concerning the construction, validity, enforcement and interpretation of the agreement shall be governed by Florida Law. (R&R 7)[1] Hence, evaluation of the non-compete agreements is guided

---

[1]    Lavelle's Agreement contained an additional clause  providing that the non-compete and non-solicitation provisions will be enforced to the fullest extent permitted by the law of the state in which Lavelle resides at the time of enforcement of those

by FLA. STAT. § 542.335, which addresses the enforceability of a restrictive covenant. Section 542.335 requires the party seeking enforcement to show a valid writing, a breach implicating its legitimate business interests, and the reasonable necessity of the injunction's time interval to protect those interests. Additionally, for the purposes of evaluating likelihood of success on the merits, it creates three relevant legal presumptions in favor of the former employer. First, the court is to include among legitimate business interests any "[s]ubstantial relationships with specific prospective or existing customers." FLA. STAT. § 542.335(1)(b). Second, the court is to presume a non-competition requirement of six months or less to be reasonable. FLA. STAT. § 542.335(1)(d)(1).  And third, the court may not "employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly."  FLA. STAT. § 542.335(1)(h). Ultimately, unless a defendant can show that the restriction is "overbroad, overlong, or otherwise not reasonably necessary" to protect the employer's interests, Florida law favors enforcement of the non-compete covenant as written. FLA. STAT. § 542.335(1)(c).

Impact's first objection is that the Non-Compete Agreements do not prevent the Individual Defendants from working for Impact because Impact does not fall within either of the two categories of competitors covered by the Agreements–"office products superstores" and "contract/commerical stationers." (Def. Impact's Objections 15.) While it is undisputed that Impact is not an "office products superstore," Impact argues it is not included within "contract/commercial stationers" because it is an "independent office supply business"–a "well-defined segment of the office supply industry focusing on business-to-business sales and small

provisions, which in this case would be Ohio. (*Id.*) Thus, where appropriate, the court references Ohio law in relation to the enforcement of Lavelle's Agreement.

to medium-sized companies." (*Id.* 16.) Impact argues that Judge McHargh erred in interpreting the term "stationer" "without considering the modifier contract/commercial." (*Id.*) Impact argues that as an "independent business-to-business stationer, "Impact does not require contracts with its customers, and only rarely uses purchase agreements – a business practice different from the contract/commercial stationers identified in the Non-Compete Agreement." (*Id.* 18.) Lastly, Impact supports its argument by noting that Office Depot has used alternative versions of the Non-Compete Agreements which "specifically referenced independent office supply companies and identified Impact as an example of an independent." (*Id.* 17)

The court disagrees with Defendants that Judge McHargh failed to consider the effect and meaning of the modifier "contract/commerical." In support of his conclusion that Impact falls within the category of contract/commercial stationers, Judge McHargh specifically noted that "[i]t is uncontested that Impact is a direct competitor which competes with Office Depot in selling office supplies and related products *to a range of businesses and institutions*." (R&R, Conclusions of Law ¶ 23 (emphasis added).) In light of these specific findings, the court cannot conclude that Judge McHargh's finding was premised only on an interpretation of the term "stationer"–one who sells stationery. (*Id.* ¶ 22 (citing Webster's New World College Dictionary 1400 (4th ed. 2007).) Judge McHargh also considered Impact's business practices, which includes negotiating sales with a range of institutions in direct competition with Office Depot. (*Id.* ¶ 23.) Moreover, the court sees no reason to read the term "contract/commercial stationer" narrowly in light of the statutory prohibition against doing so. FLA. STAT. § 542.335(1)(h) ("[a] court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract

construction that requires the court to construe a restrictive covenant narrowly . . . or against the drafter of the contract.") That Office Depot has chosen to define its competitors with further specificity in other versions of its Non-Compete Agreements does not defeat this court's obligation to construe the Agreement in favor of the drafter. Impact also attempts to explain why it should not be considered a "contract stationer" (Def. Impact's Objections 17–18), but as Plaintiff noted in its Response, Impact's argument that it is not a "contract" stationer is dubious in light of the contract between Impact and a customer that was introduced into evidence at the preliminary injunction hearing. (Pl.'s Mem. in Resp. 17, ECF No. 74.)

Impact also contends that Office Depot did not show that enforcement of the Non-Compete Agreements would protect a legitimate business interest. (Def. Impact's Objections 18–24.) Judge McHargh found, to the contrary, that legitimate business interests were "pled and proved." (R&R, Conclusions of Law ¶ 11.)  Impact's argument is tenuous in light of the statutory requirement that the court consider "substantial relationships with specific prospective or existing customers" a legitimate business interest.  FLA. STAT. § 542.335(1)(b); *N. Am. Prods. v. Moore*, 196 F. Supp. 2d 1227, 1228 (M.D. Fla. 2002). Impact asserts that "[n]o evidence was introduced by Plaintiff that Kyle or Lavelle had substantial relationships with customers." (Def. Impact's Objections  22.) However, the record shows many examples of Office Depot customers that Kyle and Lavelle knew and did business with, first for Office Depot and then for Impact. (*See, e.g.*, R&R, Findings of Fact ¶¶ 43–47.) Judge McHargh found that within the first six months of their employment at Impact, Individual Defendants attempted to solicit and divert numerous Office Depot clients and customers. (*Id.* ¶ 62.) Kyle admitted to contacting at least nine Office Depot customers and making sales to at least seven of them. (*Id.* ¶ 63).  Lavelle contacted at least thirty-

five Office Depot customers, and made forty-one out of fifty-four sales to former Office Depot customers. (*Id.* ¶ 64.) The court finds the argument that Office Depot lacks a legitimate business interest in the injunctive relief sought here to be without merit.

Impact also contends that Judge McHargh erred in finding Office Depot to have a legitimate business interest in the information Individual Defendants took with them to Impact. (Def. Impact's Objections 18.) While Judge McHargh found that Individual Defendants did not misappropriate any "trade secrets" as defined by § 542.335(1), (R&R, Conclusions of Law ¶ 63), Judge McHargh nevertheless found that "Kyle and Lavelle violated the Non-Compete Agreements by spiriting away valuable confidential business or professional information that otherwise does not qualify as trade secrets." (*Id.* ¶ 64.) Florida law provides that Office Depot's business interests would also be implicated if Kyle and Lavelle took "valuable confidential business or professional information that otherwise does not qualify as trade secrets." FLA. STAT. § 542.335. (*Id.*) Impact argues that the information in question was not "confidential" because it was not marked as such, but Judge McHargh did not accept Defendants' technical arguments about the  non-confidential nature of the documents Kyle and Lavelle took with them to Impact. Objections have been duly raised to that finding.  (Def. Impact's Objections 19.)

The court agrees that the materials misappropriated by Individual Defendants were confidential.  As Judge McHargh noted, Office Depot's company policy states that "[d]ocuments that contain business related information and are not publicly disclosed should always be classified as confidential." (R&R, Findings of Fact ¶ 23.) The documents in question

> included a target list of customers, the status of those customers'
> relationship[s] with Office Depot, their forecasts, potential value of
> those accounts, revenue generation data for customers, profit dollars for
> customers, profit percentage for customers, purchasing history of

customers, margin information of customers, [and] sales data provided
to and from customers.

(*Id.* ¶ 49.) Florida courts have consistently held that mere customer lists are not protected when potential clients are easily identified.  *See GPS Indus., LLC v. Lewis*, 691 F. Supp. 2d 1327, 1335 (M.D. Fla. 2010); *Blackstone v. Dade City Osteopathic Clinic*, 511 So.2d 1050, 1051–52 (Fla. Dist. Ct. App. 1987); *but see Cont'l Group, Inc. v. KW Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357, 1375 (S.D. Fla. 2009) (holding that even publicly available information may be valuable due to work required to compile it). Here, though, the court is persuaded that the information Kyle and Lavelle took from Office Depot went beyond what would have been readily available to a startup competitor. Kyle copied, downloaded, and e-mailed to his home e-mail address, and to Lavelle, documents containing pricing and other sensitive information regarding Office Depot's current and prospective customers and businesses, providing them with the ability to "hit the ground running" in immediately competing with Office Depot.  (R&R, Findings of Fact ¶¶ 48–49.) The Office Depot documents Kyle and Lavelle used in their day-to-day dealing included fluid pricing information that was often individualized by customer. (*Id.* ¶ 24.) While a customer may provide a competitor's pricing information, Impact's Vice President testified that he would not want his salespeople to share specific discounts for specific customers directly with the competition.  (*Id.* ¶ 26.) *See also Reliance Wholesale, Inc. v. Godfrey*, 51 So.3d 561, 564 (Fla. Dist. Ct. App. 2010) (database with sales history, including price and quantity, protected as confidential). On his last day with Office Depot, Defendant Lavelle felt that some of this material was valuable enough to download and send to himself. (R&R, Findings of Fact ¶¶ 48, 50.) The court notes that these actions undermine Impact's additional contention that the information alleged to have been improperly used by Kyle and Lavelle was "residual information"–i.e., information retained in

Kyle and Lavelle's memory–not subject to the Non-Compete Agreements' confidentiality provisions. (Def. Impact's Objections 21.)

In light of the evidence considered by Judge McHargh, the court agrees with Judge McHargh's ultimate finding that there is a substantial likelihood Office Depot will prevail on the merits of the underlying lawsuit. (R&R, Conclusions of Law ¶ 59.) Individual Defendants switched in a matter of days from being sales representatives for Office Depot to being the first two employees in the region for a new competitor, and converted many of their old clients. This is precisely the conduct proscribed by the Non-Compete Agreements, to which Kyle and Lavelle are bound. Consequently, the court adopts Judge McHargh's finding that Plaintiff has a substantial likelihood of success on their breach of contract claims.

### 2. Kyle and Lavelle's Defenses to Enforcement

Defendants raised three defenses to the enforcement of the non-compete agreements and the issuance of injunctive relief. Judge McHargh rejected two in his Report and Recommendation, and did not consider the other. (R&R, Conclusions of Law ¶¶ 50, 58.) All Defendants object to Judge McHargh's rejection of the affirmative defenses of waiver and laches. In addition, Individual Defendants object to Judge McHargh's failure to address their unclean hands defense, which alleges that Office Depot has been guilty of the same unfair competitive practices of which they are accused. (Individual Defs.' Objections 28–30.) To prevent the eventual enforcement of the Non-Compete Agreements, Defendants may avail themselves of a number of affirmative defenses: specifically, they argue, the doctrines of waiver, laches, and unclean hands would apply in a trial on the merits. Defendants further argue that Ohio law applies to these affirmative defenses, and that Judge McHargh erred in applying Florida law. However, as is explained below,

- 14 -

Defendants' latter objection is unavailing because under the law of both states, their defenses to enforcement fail.

### a. Waiver

Defendants claim that the non-compete agreements should not be enforced because, through its conduct, Office Depot waived its right to enforce them.  (Def. Impact's Objections 7–11; Individual Defs.' Objections 27–28.)  The non-compete agreements expressly provided that they can be waived only "with the prior written consent of the company," and that "no course of conduct or failure or delay in enforcing the provisions of the Agreement[s] shall affect [their] validity, binding effect, or enforceability."  (R&R, Conclusions of Law ¶ 46.)  This clause poses a serious obstacle to the showing Defendants must make.  Moreover, under the law of both states, Defendants' affirmative defense requires a showing that Office Depot's conduct amounted to unequivocal relinquishment of their legal right to enforce the agreements. *See Aspen Invs. Corp. v. Holzworth*, 587 So. 2d 1374, 1377 (Fla. Dist. Ct. App. 1991); *Fireman's Fund Ins. Co. v. Vogel*, 195 So. 2d 20, 24 (Fla. Dist. Ct. App. 1967); *see also Am. Greetings v. Moonscoop*, 709 F. Supp. 2d 583, 591 (N.D. Ohio 2010) (requiring express waiver or conduct unequivocally showing the intent to waive a legal right).  The contract's plain language requires an express waiver in order to find such unequivocal relinquishment.

Defendants maintain that comments by David Fisher, Kyle and Lavelle's supervisor at Office Depot, gave them a reasonable basis to believe the Non-Compete Agreements would not be enforced against them.  (Def. Impact's Objections 7; Individual Defs.' Objections 27.).  But Fisher contemporaneously stated that "the company always has reserved the right to [enforce the

Agreements] if they chose to," and in fact reminded Lavelle of the Agreements when he submitted his resignation.  (R&R, Findings of Fact ¶ 78.)

Defendants also argue that Office Depot's conduct could be interpreted as a waiver because in the past, certain employees leaving the company had been allowed to work in the same industry.  (Def. Impact's Objections 8; Individual Defs.' Objections 27.) Judge McHargh found, and this court agrees, that the examples cited by Defendants involve employees going to work for companies "either not related, or tangentially related, to Office Depot's core business."  (R&R, Findings of Fact ¶ 80.)

Moreover, the underlying premise of waiver – the notion that Kyle and Lavelle believed they had Office Depot's permission to compete directly, despite their non-compete agreements – is belied by their subterfuges and evasiveness in leaving the company's employment, including stalling on closing significant deals while still at Office Depot, laying the groundwork to divert Office Depot customers to Impact, putting off opportunities, and talking to Office Depot customers about switching to Impact while they were still employed at Office Depot. Kyle, for example, chose to copy, download, and e-mail to his home e-mail address documents containing pricing and other sensitive information regarding Office Depot's current and prospective customers and businesses, and concealed from Office Depot the identity of his future employer, telling his supervisor that he was going to spend time with his family and perhaps work for Iron Mountain, a document management company. (R&R, Findings of Fact ¶¶ 48, 52, 55–56.) Lavelle told his supervisor that he might get involved in the restaurant business, alluding to the fact that he might work short-term in sales, but not for a competitor, although there "might be a few situations where a few products might compete with Office Depot." (*Id.* ¶¶ 58–59.)

Consequently, the court adopts Judge McHargh's finding that Defendants' waiver defense is without merit.

### b. Laches

Defendants argue that the doctrine of laches bars Plaintiff's effort to enforce the Non-Compete Agreements. To establish a laches defense, the defendant must show that there was an unreasonable delay in bringing the action and that the delay resulted in prejudicial reliance by the defendant. *T.W.M. Mfg. Co. Inc. v. Duro Corp.*, 592 F.2d 346 (6th Cir.1979); *see also Ticktin v. Kearin*, 807 So.2d 659, 663 (Fla. Dist. Ct. App. 2001); *State ex rel. Carter v. N. Olmsted*, 631 N.E.2d 1048, 1056 (Ohio 1994). The mere lapse of time does not constitute laches. *Envtl. Def. Fund v. Tennessee Valley Auth.*, 468 F.2d 1164, 1182 (6th Cir. 1972)*; Gralewski v. Bur. of Workers' Comp.*, 855 N.E.2d 879, 889 (Ohio Ct. App. 2006) ("Prejudice will not be inferred from the mere lapse of time."). The burden of proving prejudice in this affirmative defense falls on Defendants. Defendants allege that Office Depot knew about the competition for some months without acting, and argue that Office Depot's failure to enforce the Agreements led Defendants to incur extra expenses in pursuing work for Impact. (Individual Defs.' Objections 23, 25–26.) Defendants also contend that Judge McHargh did not consider these arguments adequately. (*Id.*)

The court disagrees–Defendants have failed to show unreasonable delay and prejudice. As Judge McHargh found, the delay in this case was not unreasonable as it was "in part explained by the subterfuge employed by Kyle and Lavelle, and their surreptitious defection to Impact." (R&R, Conclusions of Law ¶ 58). Although there was some brief delay after Office Depot's realization, in the fall of 2009, that Kyle and Lavelle were converting its customers, courts have consistently held that a delay of a few months is not sufficient for a laches defense. *See, e.g.*,

*Emrick v. Multicon Builders, Inc.*, 566 N.E.2d 1189, 1195 (Ohio 1991) ("Eight months is not an unreasonably long period of time and an eight-month delay in filing suit is not so egregious as to shock the conscience."); *Oliveira v. U.S.*, 827 F.2d 735, 740 (Fed. Cir. 1987) ("litigation delays ranging from 11 months to 4 years 5 months have provided sufficient grounds upon which the doctrine of laches has been invoked"); *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 101 (5th Cir. 1978) (nine month delay did not prove the prejudice necessary to invoke the laces doctrine); *Aero Fulfillment Servs., Inc. v. Tartar*, No. C-060071, 2007 WL 120695, *5 (Ohio Ct. App. 1 Dist. Jan. 19, 2007) (finding "lack of urgency" where plaintiff moved for injunctive relief ten months after employee left)

Moreover, the court finds Defendants' argument regarding prejudice to be without merit. Kyle and Lavelle claim that they would not have spent time and money developing their business, and that Impact would not have expended resources in establishing its brand in Ohio, "had it been clear that Office Depot intended to seek enforcement." (Individual Defs.' Objections 26.) However, "[t]he law does not permit a court to refuse to reach the merits of a case by applying laches because a party is capable of spending large sums in the pursuit of the course of conduct[] that is alleged to constitute the wrong." *Tandy Corp. v. Malone & Hyde, Inc.*, 777 F.2d 1130, 1132 (6th Cir. 1985). In this case, Kyle and Lavelle were evasive regarding their employment prospects when they left Office Depot in June of 2009. When it became clear to Office Depot that both Kyle and Lavelle were competing directly against Office Depot, Office Depot sent cease and desist letters to Kyle, Lavelle, and Impact President in October of 2009. Under these circumstances, Defendants' argument regarding prejudicial reliance is not credible. Consequently, the court finds that the equitable defense of laches is inapplicable in this case.

- 18 -

### c. Unclean Hands

Lastly, Individual Defendants object to Judge McHargh's failure to respond to their affirmative defense of "unclean hands." (Individual Defs.' Objections 28–30.) Kyle and Lavelle argue that the evidence shows that Office Depot (1) hires employees from competitors in contravention of those employees' non-compete agreements; (2) encourages those employees to divulge information obtained from their previous employment; (3) encourages salespeople to obtain confidential competitor information; and (4) encourages salespeople to entice customers to break their contracts with competitors. (*Id.*) Kyle and Lavelle argue that Judge McHargh's omission was "prejudicial error." (*Id.* at 30.).

The court, however, disagrees for the simple reason that "'[a] defendant in an equity action may not avail himself of the defense of 'unclean hands' on the part of the plaintiff, where the questioned conduct of the latter affected third persons and not the defendant.'" *Burns v. Fox*, 144 N.E.2d 152, 157 (Ohio Cm. Pl. 1953) (quoting *McClanahan v. McClanahan*, 72 N.E.2d 798, 799 (Ohio Ct. App. 1946); *see also Sherfel v. Gassman*, 748 F. Supp. 2d 776, 789 (S.D. Ohio 2010)("The doctrine requires that the alleged misconduct on the part of the plaintiff relate directly to the transaction about which the plaintiff has made a complaint."); *Home Design Servs, Inc. v. Stewart*, No. 3:09CV140-MCR, 2011 WL 796741, at *6 (N.D. Fla. Feb 28, 2011) (citing *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993)). The conduct demonstrating "unclean hands" must be established by clear, unequivocal and convincing evidence. *Kearney & Trecker Corp. v. Cincinnati Milacron, Inc.*, 562 F.2d 365, 371 (6th Cir. 1977).

- 19 -

In this case, Defendants point to conduct on the part of Office Depot with respect to third parties not represented in the instant suit–other Office Depot salespeople, competitors' employees, and customers. None of Defendants' allegations concern any transaction between Office Depot and the Defendants and the subject matter of this suit. There is no evidence that Office Depot engaged in unfair practices against Kyle and Lavelle. *See, e.g.*, *Midwest Motor Supply Co. Inc. v. Davis*, No. C2-02-531, 2004 WL 4058123 (S.D. Ohio Apr. 14, 2004) (holding that employer who previously induced former employee to breach non-compete agreement with prior employer and was now seeking to enforce its own non-compete agreement against former employee and new employer was guilty of unclean hands). Although Judge McHargh did not address this defense, this court finds it is without merit.

### B. Irreparable Harm to Office Depot Absent the Injunction

The court must next consider whether Plaintiff would suffer irreparable harm absent an injunction. Judge McHargh found Office Depot established one or more legitimate business interests justifying the restriction, and that in the context of non-compete disputes, Florida law presumes that irreparable injury arises out of violations of enforceable restrictive covenants. (R&R, Conclusions of Law ¶¶ 51, 53, 65); *see also* FLA. STAT. § 542.335(j) (providing that "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant"). Defendants objected to the Magistrate Judge's finding of irreparable harm, which they argue was improperly based on Florida's statutory presumption of harm rather than on Ohio law. (Def. Impact's Objections 2–4; Individual Defs.' Objections 1.) Under Ohio law, "a plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or the existence of an actual threat of such injury." *Robert W. Clark, M.D.,*

*Inc. v. Mt. Carmel Health*, 706 N.E.2d 336, 340 (Ohio Ct. App. 1997) (citations omitted); *see also Friendship Materials, Inc. v. Michigan Brick, Inc.*, 670 F.2d 100, 104 (6th Cir. 1982) (a "plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue"). This is so even in suits seeking enforcement of covenants not to compete. *Hubman Supply Co. v. Irvin*, 119 N.E.2d 152, 155 (Ohio Cm. Pl. 1953). Defendants argue such evidence is lacking in this case.

Defendants' objection raises a number of choice of law issues concerning the showing a plaintiff must make before a federal court sitting in diversity can issue a preliminary injunction. Under *Hanna v. Plumer*, 380 U.S. 460 (1965), the federal court applies the federal rules of civil procedure to the exclusion of state rules so long as the federal rule "transgresses neither the terms of the [Rules] Enabling Act nor constitutional restrictions." *Id.* at 1144. Federal Rule of Civil Procedure 65, which incorporates traditional equity practice, meets this test, and thus the court applies federal procedure in determining whether a preliminary injunction should issue. *See S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991), *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991). To qualify for injunctive relief, therefore, Office Depot must meet the four-part test presented above. *See In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).[2]

---

[2]     The court notes that Ohio courts apply the same four factors. *See Proctor & Gamble Co. v. Stoneham*, 747 N.E.2d 268 (Ohio Ct. App. 2000) ("[A] party requesting a preliminary injunction must show that (1) there is a substantial likelihood that the plaintiff will prevail on the merits, (2) the plaintiff will suffer irreparable injury if the injunction is not granted, (3) no third parties will be unjustifiably harmed if the injunction is granted, and (4) the public interest will be served by the injunction.")

What constitutes irreparable harm, however, is a different matter from the factors a plaintiff must satisfy under Fed. R. Civ. P. 65 before an injunction will issue. The Florida Legislature has chosen to define a violation of an enforceable restrictive covenant as a presumptively irreparable injury to the party seeking enforcement. FLA. STAT. § 542.335(j). In this case, Kyle and Lavelle's agreements provide that issues concerning the construction, validity, enforcement and interpretation of the agreements are governed by Florida law. (R&R, Findings of Fact ¶ 4.) Contractual choice-of-law clauses "incorporate only substantive law, not procedural provisions." *Dudek v. Thomas &Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 834 (N.D. Ohio 2010). Thus, if viewed as substantive law that was incorporated into Kyle and Lavelle's non-compete agreements, Florida's presumption of irreparable harm was properly applied by Judge McHargh to the facts of this case.

The court, however, need not decide this issue because it disagrees with Defendants that the record in this case is devoid of evidence demonstrating irreparable harm. In the context of non-competes, courts have consistently held that the "loss of customer goodwill often amounts to irreparable harm because the damages are difficult to compute." *Brakefire, Inc. v. Overbeck*, 878 N.E.2d 84, 106 (Ohio Com. Pl. 2007); *Basicomputer*, 791 F. Supp. 2d at 1293, *aff'd*, 973 F.2d 507 (6th Cir. 1992). The court in *Basicomputer* noted that the purpose of non-compete covenants is to protect against unfair competition, loss of goodwill and client confusion. *Basicomputer*, 973 F.2d at 511–12. In affirming the grant of a preliminary injunction, the Sixth Circuit stated that "[the plaintiff] had suffered, and would continue to suffer, competitive losses and losses of customer goodwill," and those losses were difficult to quantify because they resulted from an "unfair price situation." *Id.* The ongoing drain of customers, coupled with testimony from the

- 22 -

plaintiff's president that the resulting financial losses were incalculable, led to a finding of irreparable harm. *Id.*

In the record before the court, Plaintiff has shown some actual and threatened irreparable harm in the form of loss of customer goodwill, unfair competition, and other unquantifiable harms. Defendants selectively cite portions of their cross-examination of Office Depot Employee David Fisher and argue that his testimony sets this case apart from *Basicomputer* because here, "the actual amount of damages . . . could be accurately proven." (Individual Defs.' Objections 5.) Specifically, Defendants argue that Fisher, Kyle and Lavelle's former district manager, "testified that there was a concrete formula that could be used to determine what Office Depot losses, if any, were attributable to any breach of Kyle and Lavelle's non-competition agreement. (*Id.*) Additionally, Defendants argue that "Office Depot has not experienced any other loss in the form of lost good will or reputation." (*Id.*)

The court, however, disagrees with Defendants' interpretation of the cited testimony. While Fisher conceded that some sales losses during the six-month period of unfair competition could be calculated, he nevertheless expressed that it would be difficult to calculate "future" and residual damages attributable to the loss of business:

> Q. So you could take it – there's a mathematical formula that you can use to actually define what the harm was by way of these sales to Office Depot, right?
>
> A. Somewhat because you have both the immediate impact of that six-month period but then you also have the ongoing residual income and profits that would have come from those accounts, assuming you maintained them.
>
> Q. And you could take your historical – your history on that, you could take a formula for that and calculate that out, also, would you agree with me?

- 23 -

> A. Somebody probably could.
>
> Q. Okay. But you'd agree with me there's a mathematical formula we could use to calculate those damages for the six-month time frame and how they go out, right?
>
> A. Well, we could certainly calculate the damages over the six-month period.  I can't necessarily speak as to how – whether – how we could calculate going forward, but I think that you could look at some different things in terms of tenure of the account .

(David Fisher's Test., Prelim. Inj. Hr'g Tr. 781:10–782:5, ECF No. 62.). That Defendants "might be able to show how much money it lost by virtue of [Kyle and Lavelle's] breach . . . does not necessarily mean that if [Office Depot] is awarded that amount it will be made whole. In non-competition cases the future effects of such a covenant's violation must be considered." *Globe Servs., Inc. v. Palmer*, No. CA 86-02-028, 1986 WL 8909, *2 (Ohio Ct. App. 12 Dist. Aug. 18, 1986).

Further, while Fisher testified on cross-examination that he was "not aware" of loss of good will since the departure of Kyle and Lavelle, on redirect, Fisher provided an example:

> Q. When Mr. Lavelle and Mr. Kyle resigned and began competing, excuse me, you were asked about loss of reputation or good will. Were there any customers that wouldn't see you?
>
> A. Yes.
>
> Q. Which customers were those?
>
> A. Well, Suarez Industries was one that specifically would not grant us an appointment.

(*Id.* 819:18–820:1.) The above is hardly "uncontroverted evidence" that Office Depot's damages could be adequately quantified. Rather, the testimony reflects the difficulty in quantifying harm in the context of non-compete disputes. The opportunities lost by Office Depot during the period

in which Kyle and Lavelle were allegedly in breach of their agreements was significant. Had the non-compete clause been observed, according to Fisher, Impact

> certainly wouldn't have taken all this business from us in the first six months. It would have given us an opportunity to have hired a new salesperson, to get that person trained, and at least give them a chance to introduce themselves to their customers and to hopefully sustain a relationship with them.

(David Fisher's Test., Prelim. Inj. Hr'g Tr. 448:22-449:2.)

Although some of Office Depot's losses may be compensable by money damages, not all of them are, particularly when one considers loss of goodwill and future losses attributable to losing an account. Accordingly, the court finds that Plaintiff has demonstrated some irreparable injury. *Cabot v. King*, 790 F. Supp. 153, 155 (N.D. Ohio 1992) ("[T]he showing of a strong likelihood of prevailing on the merits will enable a court to issue an injunction despite a lesser showing of irreparable harm.")

### C.  Substantial Harm to Others

The court must next consider the probability that granting the injunction will cause substantial harm to others. Judge McHargh found that granting a preliminary injunction would not cause substantial harm to third party customers, and to Kyle and Lavelle. With respect to Kyle and Lavelle's claim that their customers would suffer harm because customers require service to address various problems, Judge McHargh found that Impact had methods for covering accounts when the account representative was unavailable. (R&R, Conclusions of Law ¶ 42.) Further, Judge McHargh found that enforcement of the non-compete agreement would not cause substantial harm to Kyle and Lavelle. With respect to Kyle, Judge McHargh's finding was premised on FLA. STAT. § 542.335(1)(g)(1), which provides that a court "[s]hall not consider any

individualized economic or other hardship that might be caused to the person against whom enforcement is sought." (*Id.* ¶ 32). With respect to Lavelle, Judge McHargh found that enforcement would not pose undue hardship under the reasonableness test set forth in *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (1975). (*Id.* ¶¶ 34–40.) Under this test, "undue hardship on the employee" is a consideration. *Id.* Ohio courts have explained that "[a] determination that a covenant is unduly harsh requires a much greater standard than determining whether the covenant is merely unfair." *Robert W. Clark, M.D., Inc. v. Mt. Carmel Health*, 706 N.E.2d 336, 343 (Ohio Ct. App. 1997); *Penzone, Inc. v. Koster*, No. 07AP-569, 2008 WL 256547, *4 (Ohio Ct. App. 10 Dist. Jan. 31, 2008) ("All non-compete agreements create some level of hardship.").

Defendants argue that Judge McHargh erred when he found that a preliminary injunction would not substantially harm third parties, noting that Judge McHargh found that Impact had procedures for covering accounts when the account representative is unavailable, while at the same time recommending an injunction that would prohibit Impact from "servicing any of its customers who, at one time or another, were Office Depot customers."  (Individual Defs.' Objections 10.) Defendants also note that Office Depot admitted that a change in suppliers significantly disrupts a customer's business. (Def. Impact's Objections 27.) They argue that Judge McHargh's finding that "customers would be able to procure supplies and services from a variety of stationers, vendors, and superstores which supply these products" (R&R, Conclusions of Law ¶ 54), "incorrectly assumes that switching providers is an easy process." (Individual Defs.' Objections 10.)

Defendants' assertion that Judge McHargh's proposed injunction would prevent Impact from servicing "any of its customers" who were formerly Office Depot customers, however is

- 26 -

inaccurate. The recommended injunction reaches only former Office Depot customers "converted by" Kyle and Lavelle or other Office Depot employees with "Kyle and/or Lavelle's knowledge." (R&R, p. 46–47.) While these customers who were converted in alleged violation of Kyle and Lavelle's agreements might be inconvenienced, courts have found that inconvenience to customers does not necessarily militate against the issuance of an injunction, particularly where alternatives are available. *See, e.g.*, *Hoover Transp. Serv., Inc. v. Frye*, 2002 WL 31409888, at *10 (S.D. Ohio July 17, 2002) (finding substantial harm element favors neither party where customers "would still have . . . alternatives . . . to satisfy their needs); *see also N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1232 (M.D. Fla. 2002) (finding harm to defendant not significant where defendant "not prohibited . . . from soliciting customers in the market so long as they are not [plaintiff firm's] customers with whom [defendant] did business prior to his departure from [plaintiff firm].). As Plaintiff notes, it is ironic that Defendants are asserting that changing office supply vendors would impose hardship on customers given their actions in soliciting customers away from Office Depot. (Pl.'s Mem. in Resp. 28.) Additionally, this court notes that the recommended injunction would not require Impact to rescind or breach any contract with existing customers. Rather, Judge's McHargh's recommended injunction would prohibit Impact, for a period of six months, from servicing or soliciting former Office Depot customers who were converted in violation of Kyle and Lavelle's agreements "where no contractual relationship exists" with those customers, and from renewing existing contracts with customers who were converted in violation of Kyle and Lavelle's agreements. (R&R, p. 46–47.) And, as Judge McHargh found, courts have enforced non-compete agreements "against both the employees who signed the agreements as well as against the defendant employer, even where the

employees were the only signatories to the non-compete  agreements." (R&R, Conclusions of Law ¶ 43 (citing *N. Am. Prods.*, 196 F. Supp. 2d at 1229 (finding enforcement against new employer proper because "[a]ny other result would render a non-compete clause or a non-solicitation clause to be unenforceable by use of the simple expedient of performing all solicitations in the name of a corporate nonsignatory or through use of an agent to aid and assist the ex-employee in violating the agreement"))).)

Individual Defendants further argue that Judge McHargh erred in applying Florida law with respect to Kyle, (Individual Defs.' Objections 7), and in his application of the relevant law with respect to Lavelle. (*Id.* 9–11.) Even assuming that Florida law should not have been applied to evaluate hardship, the court disagrees with Defendants that Judge McHargh "complete[ly] disregard[ed] . . . the hardship the recommended preliminary injunction will impose on Kyle and Lavelle." (Individual Defs.' Objections 7.) Rather, the Report and Recommendation shows that Judge McHargh considered the duration of the non-compete period as well as Lavelle's background and experience in applying the *Raimonde* reasonableness test. (R&R, Conclusions of Law ¶¶ 36–40.) Even though Judge McHargh only applied this test with respect to Lavelle, his factual findings would support the same conclusion with respect to Kyle, who was also subject to a brief six- month non-compete period and "had approximately five years of sales experience at Pitney-Bowes, and had been trained in a sales technique called Fact Finder." (R&R, Findings of Fact, ¶ 12.) Judge McHargh noted that the six month time period "would not be problematic" (R&R, Conclusions of Law ¶ 38, n.5), and cited *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 998 (6th Cir. 2007), wherein the Sixth Circuit upheld a two-year non-compete period and noted that "[n]umerous Ohio state courts have upheld covenants that extended for three to five

years, finding that a covenant of five years is not per se unreasonable." *See also Procter &* *Gamble Co. v. Stoneham*, 747 N.E.2d 268, 271 (Ohio Ct. App. 2000) (affirming finding that three year non-compete period was reasonable). Judge McHargh also distinguished cases where a defendant's specialized experience would hamper their employment prospects during the non-compete period. (R&R, Conclusions of Law ¶¶ 38–39.) Judge McHargh cited *Cintas Corp. v.* *Perry*, 2004 WL 2032124, *15 (N.D. Ill. Aug. 20, 2004), wherein the court applied Ohio law and held that two-year non-compete period was not unduly harsh where defendant could "use his managerial or sales skills" in a "variety of other industries" because "sales is not a 'unique profession.'" *Id.*; *see also Brentlinger Enter. v. Curran*, 752 N.E.2d 994, 1004 (Ohio Ct. App. 2001) (no undue hardship where sales experience transferable to other sales jobs).

Additionally, Defendants argue that the court should consider the current economic climate in evaluating undue hardship (Ind. Defs.' Objections 8.) The court, however, will not evaluate hardship on a post-hoc basis, particularly where there is evidence that Defendants wilfully incurred the risk that Office Depot would seek enforcement of a contract they signed. (R&R, Findings of Fact ¶ 35 (finding that Impact represented to Kyle and Lavelle it would "have their backs" if employment were challenged by Office Depot)); *see also N. Frozen Foods, Inc.* *v. McNamara*, No. 71378, 1997 WL 691182, *2 (Ohio Ct. App. 8 Dist. Nov. 6, 1997) (undue hardship determined "by the terms of the agreement at the time it was entered into"); *Robert W.* *Clark, M.D., Inc. v. Mt. Carmel Health*, 706 N.E.2d 336, 342 (Ohio Ct. App. 1997) (bound party " must have anticipated that it could be hurt economically by . . . invocation of the covenant not to compete"); *see also Gateway 2000, Inc. v. Livak*, 19 F. Supp. 2d 748, 753 (E.D. Mich 1998) (finding harm to defendant mitigated where defendants "wilfully incurred the risk that Gateway

- 29 -

would seek enforcement of the non-compete agreement"). Consequently, the court agrees with Judge McHargh's ultimate conclusion that Defendants have not shown that the substantial harm factor weighs against the issuance of an injunction.

Lastly, the court notes that in this case, harm to others can be mitigated by limiting the geographic scope of Judge McHargh's recommended injunction, to which Defendants objected. (Individual Defs.' Objections 11–22; Def. Impact's Objections 26–27); *see also MP TotalCare Servs., Inc. v. Mattimoe*, 648 F. Supp. 2d 956, 963 (N.D. Ohio 2009) ("If a covenant imposes an unreasonable restriction, courts can modify the agreement to the extent necessary to protect the employer's legitimate interest and then enforce the covenant as modified."); *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994) ("A district court has broad discretionary powers to craft an injunction to the specific violations.") Judge McHargh proposed an injunction that would cover "the Northeast Ohio territory," which he defined as "an area bounded by the Ohio state line on the east, I-70 on the south, US-23 on the west [but NOT including the City of Columbus, which shall be considered outside the prohibited territory], and Lake Erie on the north." (R&R, p. 46.) Defendants object that this territory "is 80% larger than Kyle's Office Depot territory and 900% larger than Lavelle's former Office Depot territory." (Individual Defs.' Br. in Reply 21, ECF No. 75-1.) Limiting the geographic scope of the injunction would minimize hardship to the Defendants and disruption of their business and it would also be in line with what Plaintiff originally requested in its Motion for a Preliminary Injunction – an injunction that would cover the geographic territories that Kyle and Lavelle were assigned while at Office Depot. (Pl's Mot. for TRO and Prelim. Inj., ECF No. 2.)  As Plaintiff noted in its Response, "even if Individual Defendants decide to stay in the office supply industry, during the short six (6) month injunction

period, Individual Defendants can work in other territories in Ohio not covered by the recommended order." (Pl.'s Mem. in Resp. 29.)

In light of the limited duration of the non-compete period, the non-specialized nature of Individual Defendants' experience, the alternatives available to Impact customers that were converted in violation of Kyle and Lavelle's agreements, and the appropriate tailoring of Judge McHargh's proposed injunction, the court does not find that enforcement would create undue hardship for Kyle and Lavelle and for third parties. Accordingly, this factor does not weigh against the issuance of an injunction.

### D.  Public Interest Served by an Injunction

Judge McHargh found that the public interest would be served by the issuance of a preliminary injunction. (R&R, Conclusions of Law ¶ 65 (citing *N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1231–32 (M.D. Fla. 2002) ("Under Florida law, the public has an interest in the enforcement of restrictive covenants.").) Neither Impact nor the Individual Defendants raised objections to Judge McHargh's finding that the public interest would be served by the issuance of an injunction, including his application of Florida law. Consequently, the court finds no reason to disturb this finding. The court adds, however, that the Sixth Circuit and Ohio state courts have also recognized that the public has an interest in enforcement of reasonable non-compete agreements. *Patio Enclosures, Inc. v. Herbst*, 39 Fed. App'x 964, 970 (6th Cir. 2002*); Alan v. Andrews*, No. 06 MA 151, 2007 WL 1544717, *11 (Ohio Ct. App. 7 Dist. May 22, 2007); *see also UZ Engineered Prods. Co. v. Midwest Motor Supply Co., Inc.*, 770 N.E.2d 1068, 1081 (Ohio Ct. App. 2001) (noting public interest factor "is primarily concerned with the public's

31

interest in promoting fair business competition" ). Accordingly, the court finds that this factor also weighs in favor of granting a preliminary injunction.

### E. Defendants' Motion to Supplement their Objections

On October 6, 2011, Defendants filed a Motion to File a Supplemental Memorandum in Support of their Objections to Judge McHargh's R&R. (ECF No. 80.) The court denies Defendants' Motion. Defendants have had ample opportunity to object to the findings in Judge McHargh's Report. Moreover, the argument proffered by Defendants in their supplemental filing has no merit. Defendants argue that based on this court's Order granting in part and denying in part Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (ECF No. 79 ), "the Magistrate's only purported basis for issuing an injunction – the protection of 'confidential information' is subsumed by the UTSA, and is thus insufficient to justify the imposition of an injunction." (Defs.' Supplemental Mem. 1–2, ECF No. 81.)

Defendants' argument is based on a misreading of this court's prior Order, Judge McHargh's R&R, and the applicable law. In its September 26, 2011 Order, this court partially dismissed common-law claims for misappropriation of trade secrets; tortious interference with contract; unjust enrichment; breach of duty of loyalty, good faith and fair dealing; and tortious interference with business relations, to the extent that they were premised on allegations of misappropriation of trade secrets or confidential information. The court's findings were based on the Uniform Trade Secrets Act (UTSA), which, as adopted by both Florida and Ohio, contains a preemption clause that displaces conflicting tort, restitutionary, and other civil

32

remedies for misappropriation of trade secrets. *See* FLA. STAT. § 688.08(1); OHIO R.C. § 1333.67(A).[3]

Notably, the court's Order did not reach Plaintiff's claim for breach of contract, nor did Defendants move to dismiss Plaintiff's contractual claims on UTSA preemption grounds. That is because by its plain terms, the UTSA does not affect "contractual remedies," whether or not they are based on misappropriation of trade secrets. FLA. STAT. § 688.08(2)(a); OHIO R.C. § 1333.67(B)(1); *see also Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005) ("Thus, []UTSA preempts all claims, other than claims *ex contractu*, based on misappropriation of trade secrets.") Judge McHargh specifically found that Plaintiff has a substantial likelihood of success "*on the breach of contract claims* concerning the Non-Compete Agreements." (R&R, Conclusions of Law ¶ 59 (emphasis added).) Plaintiffs are seeking not only protection of confidential information, but also enforcement of *contracts* that Kyle and Lavelle signed, and Judge McHargh found were violated. Accordingly, Defendants' Motion is denied. (ECF No. 80.)

---

[3]     Defendants' Motion was based on the UTSA as adopted by Ohio. The court notes, however, that the preemption analysis is the same under the Florida Uniform Trade Secrets Act ("FUTSA"). *See, e.g., Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1181 (M.D. Fla. 2005) (no preemption of other civil claims that contained allegations "not entirely dependent upon the FUTSA claim"); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1336 (S.D. Fla. 2002) (unfair competition claim preempted where allegations are "based on . . . alleged misuse of certain information" and where "Plaintiff has not identified any material distinction between the wrongdoing alleged in the trade secret claim and that alleged in the unfair competition claim").

## IV.  CONCLUSION

For the foregoing reasons, the court adopts Magistrate Judge McHargh's recommendation to grant Plaintiff's Motion for a Preliminary Injunction. Plaintiff has shown that it has a strong likelihood of success on the merits; would suffer some irreparable harm in the absence of an injunction; that others would not be substantially harmed by the issuance of an injunction; and that the public interest would be served by enforcement. The court, however, limits the geographic scope of the injunction proposed by Judge McHargh. Defendants' Motion to Supplement their Objections is denied. (ECF No. 80.)

Pursuant to Civil Rule 65(c), no preliminary injunction should issue without the giving of security by the applicant sufficient for payment of costs and damages as may be incurred or suffered by any party to have been wrongfully enjoined. Accordingly, in order for the injunction to be effective, Plaintiff will be required to file an supersedeas bond in the amount of $150,000 with the court in a form to be approved by the Clerk of the Court in order to compensate the Defendants should it later be determined that the preliminary injunction should not have been entered.

For the above-mentioned reasons, IT IS ORDERED that Defendants are enjoined as follows:

(1) Kyle and Lavelle are prohibited, for a period of six months from the date bond is posted, from soliciting or servicing customers of Office Depot or potential customers of Office Depot solicited by Kyle, Lavelle or other Office Depot employees with Kyle and/or Lavelle's knowledge;

34

(2) Kyle and Lavelle are prohibited, for a period of six months from the date bond is posted, from being employed by, or performing services on behalf of Impact, within the geographic territory they were assigned during their employment with Office Depot;

(3) Kyle and Lavelle are prohibited, for a period of six months from the date bond is posted, from using or disclosing Office Depot's confidential information, and from otherwise violating the Employee Agreements in any way;

(4) Impact is prohibited, for a period of six months from the date bond is posted, from soliciting or servicing former customers of Office Depot converted by Kyle, Lavelle or other Office Depot employees with Kyle and/or Lavelle's knowledge within the geographic territories assigned to Kyle and Lavelle during their former employment with Office Depot, where no contractual relationship exists with said customers; and,

(5) Impact is prohibited, for a period of six months from the date bond is posted, from renewing a contractual relationship with former customers of Office Depot converted by Kyle and Lavelle or other Office Depot employees with Kyle and/or Lavelle's knowledge within the geographic territories assigned to Kyle and Lavelle during their employment with Office Depot, where a contractual relationship presently exists with said customers.

This Order is in effect for a period of six (6) months following the date Plaintiff posts bond. Fed. R. Civ. P. 65(b)(2).

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

October 11, 2011

35